Thomas *v.* Achilles.

———•◦•———

THOMAS and others *vs.* ACHILLES.

A mutual insurance company, organized under the general insurance act of April, 1849, has no right to divide its risks into two classes, according to the degree of hazard, and to assess the premium notes only for the payment of losses happening in the class to which such notes belong.

The assured has a right to look to the entire capital of the company, i. e. the whole amount of premium notes taken, for his indemnity, in case of loss, instead of being limited to the capital of that class of risks in which his policy has been placed. And in case an *assessment* is made, he has a right to claim that *all* the premium notes held by the company should be embraced therein.

CASE agreed upon by the parties, pursuant to the code, § 372. It was stated that the Orleans Insurance Company was a body corporate, created under the general act to provide for the incorporation of insurance companies, passed April 10, 1849. Copies of the charter and by-laws were annexed to the case. It was further alleged that the company was duly organized and qualified to transact business. That it divided all its risks into two classes, first and second. The defendant made application for, and obtained, a policy of insurance, and gave his note for $350,

dated January 25, 1851, by which he promised to pay the company the sum named, in such proportions and at such time or times as the directors should, agreeably to their charter and by-laws, require. The company, on the 4th, March, 1852, made a general assignment for the benefit of all its creditors, to the plaintiffs in trust, &c. In December, 1851, the amount of the premium notes and assets held by the company, being all the notes that had been taken and were in force, was about $30,000 in the *first class*, and about $83,000 in the second class; and the company made an assessment upon all the premium notes given to them for insurance in the second class, in which the defendant's policy and note had been placed; to pay claims against said company properly chargeable as against said second class. The defendant was notified and required to pay the assessment, which he neglected to do. The notes classed by the company in the first class were not included in the assessment. It was conceded that in all other respects the assessment was legal and proper. The plaintiffs claimed judgment for the amount of the note, and the defendant claimed that the assessment, not including the notes in the first class, was irregular, illegal and void.

*N. Davis*, for the plaintiffs.

*T. Hastings*, for the defendant.

*By the Court*, MARVIN, J. It is provided in the articles of association or charter of the company, that "the corporation may divide applications for insurance into two or more classes, according to the degree of hazard, and the premium notes shall not in such case be assessed for the payment of any losses, except in the class to which they belong." It is declared by the by-laws that the company will divide the risks taken into two classes. It is not denied by the defendant's counsel, that the provision in the "charter" is sufficiently comprehensive to authorize the company to adopt the course pursued in this case, but it is insisted that such provision in the charter is not author-

ized by the general law providing for the incorporation of insurance companies.

It will not be contended that the *associates* could by their articles of association, or *charter*, confer upon the corporation any other or greater powers than are authorized by the general act under and by virtue of which the corporation was organized. It will be necessary, therefore, to examine the statute. It is to be found in Session Laws of 1849, page 441. The 1st section authorizes any number of persons, not less than thirteen, to associate and form an incorporated company for either of certain purposes, which are specified. The second specification is to make insurance on dwelling houses, stores, &c.; and the Orleans Insurance Company was organized to transact the business specified in this provision, and upon the plan of mutual insurance. The 2d section confers certain powers having no relation to the question we are now considering. The 3d and 4th sections provide for the manner of organizing the companies. In the 4th section the individuals associated for the purpose of organizing their company, are authorized, "in case the business of such company is proposed to be conducted on the plan of mutual insurance, to open books, to receive propositions, and to enter into arrangements in the manner and to the extent hereinafter specified." We shall have occasion to recur to this provision.

The 5th section contains provisions relating to the different companies that may be organized under the act; extracting those provisions touching mutual insurance companies, out of the city of New-York and county of Kings, and they will be found to be, that no mutual insurance company shall commence business until agreements have been entered into for insurance, the premiums on which shall amount to $100,000, and the notes received therefor, payable at the end of or within twelve months from the date thereof, and which notes shall be considered a part of the capital stock, and shall be deemed valid and shall be negotiable and collectable for the purpose of paying any losses which may occur, or otherwise. By the 10th section it is made the duty of the corporation to declare in the charter the mode

and manner in which the corporate powers given under and by virtue of the act are to be exercised.

I have referred to all the provisions of the act upon which any claim can be founded, of authority for the clause extracted from the charter of the Orleans Insurance Company. And as I understand the act, it contains no authority for the provision in the charter touching the division of the capital of the company. On the contrary, it is in contravention of the act and its entire policy. I have always supposed that there was a principle involved in those provisions of mutual insurance companies incorporated by the legislature, which prohibited the issuing of any policy until applications should be made for insurances for a certain amount named in their charter. And under the general act we are now considering, as we have seen, no mutual insurance company can commence business until the premiums upon the agreements for insurance shall amount to $100,000, and notes must be taken therefor. These notes are the capital stock, or a part of the capital stock, and they continue to be capital stock after the company is organized; and those received for premiums after the company has commenced issuing policies are capital stock. This is sufficiently evident from obvious provisions of the law and from its entire system and policy. The charter is to be filed in the office of the secretary of state, and the attorney general is to examine it, and if found to be in accordance with the requirements of the act, &c. he is to certify it to the comptroller, who is to cause an examination to be made; and the examiners are to certify, on oath, that the company has received and is in actual possession of the *capital* premiums or engagements of insurance to the full extent required by the 5th section of the act. (§ 11. See also § 13, near the end, as to the losses of a portion of the capital. Also § 19.) The reason for requiring a certain amount of capital stock, by mutual insurance companies, before commencing business, I have supposed to be, that in case of losses to be paid, there should be a sufficient fund out of which to make payment, and that such losses should not fall too heavily upon any member of the company. The capital at the commencement of business must be at least $100,000, and if in the course of the business

it falls below that amount, certain steps are to be taken to raise it to the original amount. (§ 13.) If the company can divide their risks into classes, and compel the assured to look only to the capital which that class of risks in which he has been placed produces, in the form of promissory notes, and also compel those whose policies and premium notes belong to that class to pay the losses of the class, then all the provisions touching the amount of capital will afford no security against the evil and danger of an insufficient fund, or of large and unreasonable contributions. Such a practice, as was said upon the argument, results practically in two independent corporations, under one organization, neither of which might possess the requisite capital. The capital, assets and means of the one might be entirely exhausted while the other might not have been affected. The corporation, under the general law, cannot thus divide and multiply itself. The act is often ambiguous and imperfect, but it cannot be charged with the enormity of permitting a corporation organized under it, to adopt the course and practice adopted by this company. A proper and legal assessment has not been made, and there must be judgment of nonsuit or discontinuance, without prejudice to a future action when a proper assessment shall have been made.

[ERIE GENERAL TERM, November 7, 1853. *Marvin, Bowen* and *Mulleti,* Justices.]