WHITE, Receiver of the Union Insurance Company, *vs.* COVENTRY and BENSON.

A provision in the charter of a mutual insurance company organized under the act of April 10, 1849, relative to " the incorporation of insurance companies," that the corporation may divide applications for insurance into two or more classes, according to the degree of hazard, and that the premium notes shall not in such case be assessed for any losses, except in the class to which they shall belong, is valid, and not in conflict with any part of the act under which the company is formed.

And a company thus formed having divided its business and risks, pursuant to its charter, into two distinct classes or departments, viz. a *farmers'* department, and a *commercial* department, and taken notes for risks in the latter department, which notes were afterwards assessed by the receiver of the corporation, to pay losses in that department; *Held* that an action would lie, by the receiver, to collect an assessment so made.

Parties who have contracted with a corporation, as such, cannot afterwards raise the objection that the company was not legally incorporated.

If there are any defects in the organization of a company, they will be cured by a subsequent act of the legislature which treats it as an existing corporation, and changes its name.

THIS action was tried by consent, at a special term of this court, in Chenango county, in August, 1857, before 'Mr. Justice MASON, without a jury. It was upon a note in the form following: " $150. For value received in policy No. 2094, dated the 4th day of September, 1851, issued by the Union Mutual Insurance Company, I promise to pay the company, or their treasurer for the time being, the sum of one hundred and fifty dollars, in such portions and at such

time or times as the directors of the company may require, agreeably to their act of incorporation.

(Signed,) COVENTRY & BENSON."

The complaint stated that the insurance company named in the note was incorported as a mutual insurance company, pursuant to the general act providing for the incorporation of insurance companies, passed April 10, 1849. (*Laws of 1849, p. 441.*) That it had been proceeded against in the supreme court as an insolvent corporation, and that the plaintiff was, on the 6th June, 1853, appointed receiver of its property and effects; and that subsequently it had been adjudged to be insolvent, and its property had been sequestrated for the payment of its debts. The complaint then set forth the note above mentioned, and averred that an assessment had been made thereon by the plaintiff, as receiver, to pay costs and expenses which had accrued whilst the policy accompanying said note was in force. The plaintiff claimed to recover said assessment, which was the whole balance due on said note. The answer set forth, among other things, that the company was fraudulently organized, and had not power to issue policies of insurance, and had not a capital of one hundred thousand dollars. That said company had no legal existence, and that the defendants' note was without consideration.

On the trial, the declaration of intention to form a company, commission and certificates of the comptroller, and the certificate of the attorney general with the charter annexed, were proved, and also the order of the court appointing the plaintiff receiver, and the judgment sequestrating the company and confirming the plaintiff's appointment as receiver, and directing an assessment by him of the notes of the company, whereby it appeared that the defendants' note was assessed to the entire balance due thereon; and that said assessment was confirmed by the supreme court, and the plaintiff ordered to make collection thereof. It also appeared that the notes were assessed to pay for losses by fire, and for liabilities which ac-

White v. Coventry.

crued whilst the policies accompanying said notes were in force.

The second section of the company's charter was as follows: "2d. Said company is formed to make insurance on dwelling houses, stores, and all kinds of buildings, and upon household furniture, merchandise and other property, against loss or damage by fire, and the risk of inland navigation and transportation, as provided in the second subdivision of the first section of the aforesaid act. Its business shall be conducted on the plan of mutual insurance, and it shall possess all the powers conferred by said act, which now are or hereafter may be conferred by law upon an incorporated company formed under said act for the purpose aforesaid, whose business is to be conducted on the plan aforesaid."

The eighth section was as follows: "8. The rates of insurance shall be from time to time fixed and regulated by the company, and premium notes therefor shall be received from the insured, which shall be paid at such time or times, and in such sum or sums, as the corporation shall from time to time require; any person applying for insurance, so electing may pay a cash premium in addition to a premium note, or a definite sum in money, to be fixed by said corporation in full for said insurance, and in lieu of a premium note."

The tenth and eleventh sections were as follows: "10. The board of directors may, pursuant to the provisions of the said act, unite a cash capital to any extent, as an additional security to the members over and above their premium and stock notes, and prescribe the mode and manner in which such cash capital shall be subscribed and united as aforesaid.

11. The corporation may divide applications for insurance into two or more classes, according to the degree of hazard, and the premium notes shall not in such case be assessed for any losses, except in the class to which they belong."

The by-laws, as proved, contained the following, among other provisions: (*Art.* 2, § 1.) "The company shall divide their business and risks, pursuant to their charter, into two dis-

tinct classes or departments, viz. *first class, or farmers' depart-ment.* This class is designed for and confined strictly to in-suring, against fire, farm property and detached buildings. *Second class, or commercial department.* This class is, de-signed for insuring stores, shops, merchandise and all kinds of property in villages and cities, excepting what may be specially hazardous, which will not be taken by the company. To this class may be added risks on inland navigation and transportation. The accounts of each class shall be kept dis-tinct, and the premium notes in either shall not be assessed for any loss except in the class to which they may belong. The company will insure for five years or less in the first class; but in the second class, for a time not to exceed two years, viz. one year or less upon stock rates, and for two years and not less than one, mutually or for cash only; but not more than two thirds of the estimated value of any building, above the cellar wall, shall be insured therein. "§ 17. The directors may make such assessment on the premium notes as may be necessary to pay losses and expenses of assessment, and in making the same the maker shall be assessed only in propor-tion to the time his note bears date."

The defendants' note was in the "commercial department," and the notes of that department were assessed to the entire balance due thereon; but the notes in the "farmers' depart-ment" were assessed to less than the balance due thereon. The plaintiff recovered a judgment against the defendants for $90.45, being the amount of said assessment, with interest thereon from the time the same was payable, besides costs. The defendants appealed therefrom to a general term of this court.

Upon the argument at general term, the defendants' counsel claimed that the two separate organizations were entirely un-authorized by the general act, and that the object of the stat-ute was to have but one organization; to subject the whole capital *in solido* to all the risks assumed, and to make each person insured an insurer of all the rest to the amount of his

own note; and that this assessment which was sought to be enforced, not being an assessment upon the whole capital, but only upon a part, was illegal and void. The defendant also claimed that the company was not legally incorporated.

*Henry R. Mygatt,* for the plaintiff.

*James R. Cox,* for the defendants.

*By the Court,* BALCOM, J. The decision made by this court, at the Cortland general term in November, 1858, in *White, receiver,* v. *Selover and Haskill,* virtually determines this case in favor of the plaintiff.

The Union Mutual Insurance Company was organized under the act " to provide for the incorporation of insurance companies," passed April 10, 1849. (*Laws of* 1849, *p.* 441.) The 10th section made it the duty of the corporators to declare, in their charter, " the mode and manner" in which they were to exercise their corporate powers. And they declared, in the 11th section of their charter, that the corporation might divide applications for insurance into two or more classes, according to the degree of hazard; and that the premium notes should not in such case be assessed for any losses, except in the class to which they should belong. And I am of the opinion this provision of the charter does not conflict with any provision in the act under which it was formed. (*See opinion of Paige, J., MS., in Sheldon, receiver,* v. *Roseboom.*) (*a*)

(*a*) PAIGE, J. The act to provide for the incorporation of insurance companies, passed April 10th, 1849, section 3, directs the associates to file a declaration, &c., comprising a copy of their charter, and section 10 directs that the corporation declare, in their charter, the mode and manner in which their corporate powers, &c. are to be exercised. The 11th section directs that the charter be examined by the attorney general; and, if found by him to be in conformity with the act, that he certify the same to the comptroller, &c. And the same section provides that, on filing in the office of the clerk of the county, &c., certified copies of such certificate, and of the certificate of the

This court has repeatedly held, in this district, that the Union Mutual Insurance Company should be deemed to have been duly incorporated, in actions between the receiver of it

comptroller or examiner therein mentioned, &c., the company shall be authorized to commence business and issue policies. Section 12 authorizes the directors to make such by-laws as are not inconsistent with the constitution and laws of the state, as may be deemed necessary for the government of their officers and the conducting of the affairs of the company. The charter (§ 13) of the company in this case declares that the company may divide applications for insurance into two or more classes, and that the premium notes received upon such applications should not, in such case, be assessed for the payment of any losses, except in the class to which they belonged. The company, in its by-laws, divided their risks into two classes or departments, &c.

I am inclined to believe that the provisions of the general insurance act above cited, authorized the Columbian Insurance Company to divide its risks or applications for insurance into two classes. This division, in my judgment, does not infringe the provisions of the act in relation to the amount of capital, or impair the security provided by the act against the evil of an insufficient fund, or of unreasonable contributions by the assured. This division of the risks into two classes cannot be regarded as a division of the company (as stated by Mr. Justice MARVIN) into two organizations. If the capital to be applied in the payment of losses is divided, so are the risks. If the capital, in consequence of the division, is less for each department, the risks are also proportionately less. It is therefore clear that the assured cannot be injured by the division of the risks.

The 10th section of the act, which directs the company to declare, in its charter, the mode and manner in which its corporate powers are to be exercised, authorizes the company, at its election, to provide in its charter for a division of the risks, and the assessment of the premium notes for losses only which arise in the class to which they belong. Such a provision in the charter, clearly relates to the mode and manner in which the corporate powers of the company are to be exercised. The 11th section of the act, in substance, declares that the filing of the certificate of the attorney general, that the charter is in conformity to the act, together with the certificate of the comptroller, &c., as to the capital, shall authorize the company to commence business and issue policies. Such certificate of the attorney general would seem to be conclusive as to the legal right of the Columbian Insurance Company to divide its risks into two classes; for the act declares that the filing of such certificate, &c., shall be the authority of the company to commence business, &c., that is, to commence business in the mode and manner declared in its charter, which is, in the first place, by the division of the risks into two classes.

For the above reasons, I think that the decision in *Thomas v. Achilles*, (16 *Barb.* 491,) is erroneous.

White *v.* Coventry.

and those who have contracted with it as a corporation. But if there were any errors committed in its formation, they were cured by the law of 1851, which changed its name to "The Union Insurance Company." (*Laws of* 1851, *p.* 775.) The legislature had power to confirm its organization if it was irregularly formed. (*The People* v. *The Manhattan Co.*, 9 *Wend.* 351. *See* 1 *Kernan*, 102; 4 *id.* 336.)

The defendants were insured by the corporation, after its name was changed, and have not even the shadow of a right to object to the validity of its charter. They are as much estopped from setting up the invalidity of the charter, as the corporation would have been, if it had been sued by the defendants upon the policy they took of it, for a loss, by fire, of the insured property. (*See* 3 *Sandf.* 170; 17 *Barb.* 378; 17 *Ohio Rep.* 407.)

The charter being valid, as between the plaintiff and the defendants, and the note of the latter having been assessed pursuant to its provisions, they were liable to pay the assessment made on it.

These views dispose of the only points relied upon by the defendants' counsel. The judgment in the action should therefore be affirmed with costs.

Decision accordingly.