## Case No. 16,801.

### UPTON v. HANSBROUGH.

[3 Biss. 417; 5 Leg. Gaz. 60; 10 N. B. R. 368; 5 Chi. Leg. News, 242; 7 West. Jur. 238.] [1]

District Court, N. D. Illinois. Jan., 1873.

LIABILITY OF STOCKHOLDERS FOR UNPAID BALANCES—INCREASE OF CAPITAL—ESTOPPEL—ASSESSMENT BY COURT—FRAUD BY AGENTS—NOTICE DISCRETIONARY—RELEASE OF UNPAID BALANCE—PURCHASER OF STOCK LIABLE.

1. In an action by the assignee of a corporation organized under the Illinois statutes, against a stockholder to recover the amount unpaid on his stock, it is not a sufficient defense that the corporate proceedings have not been strictly in accordance with the statute.

2. Where an insurance company has attempted to increase its capital and filed papers for that purpose, received subscriptions for and sold stock under such increase, and incurred liabilities upon policies of insurance bearing upon their face evidence of such increase, this is sufficient to constitute the company a corporation de facto, so that neither it nor its stockholders can object that it is not a corporation de jure.

[Cited in Turnball v. Payson, 95 U. S. 421; Chubb v. Upton, Id. 667.]

[Cited in Fitzpatrick v. Dispatch Pub. Co. (Ala.) 2 South. 728.]

3. Where, to the public, a company had all the external indicia of being a corporation and legally entitled to exercise the rights and franchises it assumed, a person voluntarily taking stock in such company is not in a position, when sued for the balance due for such stock, for the benefit of creditors of the company, to deny the authority of the company to issue such stock, or his liability thereunder.

[Cited in Jackson v. Traer, 64 Iowa, 479, 20 N. W. 768; Clarke v. Thomas, 34 Ohio St. 63.]

4. A provision in the charter requiring the corporation to take securities for their stock to a certain amount, does not prohibit it from afterwards selling stock upon other terms, or without security.

5. A provision in the subscription and the stock certificate that the balance was to be paid on the call of the directors when ordered by a vote of a majority of the stockholders themselves, does not prevent this power being effectually exercised by this court.

6. Though no assessment or call pursuant to the terms of the subscription was made before proceedings in bankruptcy, this court became vested with all the power and control previously vested in either the chartered officers of the company or stockholders, or both collectively.

7. The fact that the agents and officers of the company represented to the stockholders at the time of their purchase that no assessment would ever be made, and that the stock was in fact non-assessable, or made other false and fraudulent statements in regard to the condition of the company, are inadmissible as evidence, and constitute no defense as against the creditors of the company.

8. This court having the power to require the stockholders to pay the balance due on their stock, it is discretionary whether it shall exercise it without notice to the stockholders. At all events, in a suit by the assignee against a stockholder such order cannot be reviewed.

9. The fact that the call was for more than was necessary to pay the debts of the company can not be tried in an action against an individual stockholder.

[Cited in Payson v. Stoever, Case No. 10,863. Cited in brief in Ward v. Farwell, 97 Ill. 597.]

10. A resolution passed by the directors of the corporation releasing the stockholders from the payment of balances unpaid upon the stock, in accordance with which the certificates of stock were stamped non-assessable, is not binding upon parties who had insured without knowledge of its existence.

11. The purchaser of a certificate of stock who surrenders it and has one issued to himself, and his own name entered upon the stock books, becomes subrogated to the rights and assumes the liabilities of an original subscriber.

[Cited in Foreman v. Bigelow, Case No. 4,-934.]

[Cited in Coleman v. Howe (Ill. Sup.) 39 N. E. 728.]

In bankruptcy. The Great Western Insurance Company, of Chicago, was organized in 1857, under a special charter granted by the legislature of the state of Illinois, with an authorized capital of one hundred and fifty thousand dollars ($150,000). But little business was done by the company until the summer of 1870, when it was reorganized under the general law of 1869, (Gross' St. 1871, c. 53,) and acquired the right to increase its capital stock to five million dollars ($5,000,-000), and actually increased it to about one million three hundred thousand dollars ($1,-300,000), issuing certificates to various persons and only requiring twenty (20) per cent. to be paid in. The Chicago fire of October 9th, 1871, rendered the company completely insolvent, the most of the stockholders at that time having paid in but twenty per cent.; in a few cases forty per cent. had been paid. A petition in bankruptcy was filed against the company on the 17th of January, 1872, upon which adjudication was had February 6th, and on the 11th of April of the same year Clark W. Upton was appointed assignee, who soon thereafter filed a petition in the district court in bankruptcy for an order against all the stockholders to pay in the amount unpaid on the stock held by them respectively, and an order was entered requiring them to do so by the 15th of August, 1872. Default having been made, the assignee brought suits against the different

---

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 5 Leg. Gaz. 60, contains only a partial report.]

stockholders for the amount remaining unpaid by each of them. Motion for new trial after verdict by a jury for $11,700. This opinion applied directly to thirteen cases against different stockholders, in which judgment was rendered at this term.

Upton, Boutell & Waterman, for assignee.

Stockholders are liable to company or its creditors for the amount unpaid on its stock. Sagory v. Dubois, 3 Sanf. Ch. 509; Hartford & N. H. R. Co. v. Kennedy, 12 Conn. 499; McClure v. Wilson, 43 Ill. 356. And this liability exists although the stockholder obtained his stock by assignment from another. Hartford & N. H. R. Co. v. Boorman, 12 Conn. 530; Ang. & A. Corp. § 534; Huddersfield Canal Co. v. Buckley, 7 Term R. 36; Hall v. U. S. Ins. Co., 5 Gill, 484; Brigham v. Mead, 10 Allen, 245. The officers and stockholders cannot alter or modify the liability of stockholders to the prejudice of creditors of the corporation. Attorney General v. Fishmongers' Co., 2 Beav. 599. An agreement of the directors of a corporation not to make further calls upon the stockholders, is wholly nugatory and void. 2 Am. Ry. Cas. 539; Sagory v. Dubois, 3 Sanf. Ch. 509. Interest upon calls made will be charged from time the same were due. Sagory v. Dubois, 3 Sanf. Ch. 546. A defect in the proceedings to organize a corporation is no defense to a stockholder sued for amount unpaid upon his stock, or to any person who has participated in acts of user as a corporation. Ellis v. Schmoeck, 5 Bing. 521; Harvey v. Kay, 9 Barn. & C. 356; Eaton v. Aspinwall, 19 N. Y. 119; Abbott v. Aspinwall, 26 Barb. 202. Nor can any person incurring a debt to a company, set up as a defense thereto any irregularity which might show that the corporation never existed. The doctrine of estoppel en pais applies. McFarlan v. Triton Ins. Co., 4 Denio, 392; Schenectady & S. Plank-Road Co. v. Thatcher, 1 Kern. [11 N. Y.] 102.

Sleeper & Whiton, for defendant Hansbrough.

Hitchcock, Dupee & Evarts, Monroe, Bisbee & Gibbs, Edward Roby, Thompson & Bishop, and Cooper, Garnett & Packard, appeared for other defendants, and argued the cases:

HOPKINS, District Judge. This case, together with several others brought by the above plaintiff as assignee in bankruptcy of the Great Western Insurance Company, against parties alleged to have been stockholders in such company, to recover the balance due for the stock held by them, now comes before the court for review on motion for new trial filed by defendants against whom verdicts were rendered. The main points relied upon by the defendants were very fully discussed upon the trial and have also on this motion been elaborately presented by the counsel for the various defendants.

I expressed my views upon them so fully during the trials and in my charges to the jury, it seems almost a work of supererogation to go over them again, but as I have had more time for reflection and examination, I will briefly state my decision, and the reasons therefor. The first point urged by the defendants, and which was common to all, was that the plaintiff had failed to show the legal organization or existence of the bankrupt company, that the plaintiff had also failed to establish the right of the company to increase its capital stock. The plaintiff gave in evidence the charter of the company granted in 1857, and also the proceedings taken by it in 1869 and 1870 to increase its capital stock, which the defendants objected to as not in compliance with the statutes. The plaintiff also showed an issue of an increased amount of capital stock after such proceedings, and the transaction of the business of insurance in the ordinary way.

If I were to examine those proceedings with the same strictness in this case as in a proceeding on behalf of the state to annul or forfeit the charter, I might find some difficulty in upholding them. But I understand the rule to be well settled that where papers having color of compliance with the statutes have been filed with the proper state officers, and meet their approval, but are in fact so defective as to be incapable of supporting the corporation as against the state, they are, as against a subscriber to its capital, held sufficient to constitute a corporation de facto, if supported by proof of user. This company attempted to increase its capital, filed papers for that purpose in the office of the auditor, received subscriptions for and sold its capital stock under such assumed increase, received part payment thereon, and incurred large liabilities upon policies of insurance issued by it bearing upon their face evidence of such increase of its capital stock. This was sufficient to constitute the company a corporation de facto, so that neither it nor its stockholders can object that it is not a corporation de jure. Buffalo & A. R. Co. v. Cary, 26 N. Y. 75.

In the matter of the Reciprocity Bank, 22 N. Y. 9, 17, the court say: "If a party makes an actual purchase of shares from a company or an individual holder, and voluntarily allows himself in this manner to be represented to the world as a stockholder, he must take the responsibilities of that situation; the person who has caused or allowed his title to be registered on the books, cannot deny the truth of that representation and disavow the ownership when it ceases to be a benefit and becomes a burden." To the public this company had all the external indicia of being the corporation, and legally entitled to exercise the rights and franchises it assumed to exercise. A party voluntarily taking stock in such company, is not in a posi-

tion, when sued for the balance due for such stock, for the benefit of the creditors of such company, to deny the authority of the company to issue such stock and transact business lawfully. Eaton v. Aspinwall, 19 N. Y. 119; Harvey v. Kay, 9 Barn. & C. 356; Doubleday v. Muskett, 7 Bing. 110; White v. Coventry, 29 Barb. 305; Trumbull Co. Mut. Fire Ins. Co. v. Horner, 17 Ohio, 407; Parish v. Wheeler, 22 N. Y. 494; Steam Nav. Co. v. Weed, 17 Barb. 378; Doyle v. Peerless Petroleum Co., 44 Barb. 239; Dutchess Cotton Manufactory v. Davis, 14 Johns. 238; Henriques v. Dutch West India Co., 2 Ld. Raym. 1535.

These authorities settle the question that the defendants are estopped in these actions from questioning the right of the corporation to issue the stock held by them.

The next question discussed was, that as the company, by its charter, was required to take a certain kind of securities for the stock, to the amount of one hundred thousand dollars, such limitation should be held to apply to all stock issued by the company, and to prohibit it from selling stock without the balance unpaid being secured in that way; and as this stock was issued upon other terms, or upon the simple promise or implied obligation to pay the balance without any security therefor, it was claimed that the contract was contrary to the spirit and intent of the statute, and therefore void. I do not think the charter susceptible of such a construction; that provision was simply to require a certain amount of cash or secured capital before it commenced business, and after it had that amount I see nothing in the act or public policy to prevent it from disposing of its stock upon such terms as it might deem best. Hart v. Tims, 3 Edw. Ch. 226. Insurance companies are organized upon a different hypothesis from banks, railroads, and manufacturing companies. The capital of an insurance company is not active, or usually required to meet its ordinary obligations; hence it is usual to issue its stock upon the payment of a small per cent. and leave the balance unpaid, subject to call, as a part of its capital whenever the emergency arises. Such unpaid balance is regarded as a part of its capital as much as if it were collected and in its treasury. Insurance contracts are contracts of indemnity, and the premiums are usually so fixed as, under ordinary contingencies, to be sufficient to pay all losses that may accrue without using any portion of the capital; while with banks, railroads, and manufacturing companies the capital is required to be used and invested in the corporate business, so that the difference between the paid up capital of insurance and other moneyed corporations is usually very great.

Another point of objection was taken, based upon the peculiar terms of the subscription and the stock certificate, in reference to the payment of the eighty per cent. unpaid upon the capital stock of the company.

Those terms were that the balance of eighty per cent. was to be paid on the call of the directors, when ordered by a vote of the majority of the stockholders themselves. The defendants claimed that they could not be made liable in any other way than by a call made in that manner; that the authority to assess could not be delegated so as to be effectually exercised, either by a court or any other parties; that there was no power vested in any court or body of men or directors to assess the stockholders, unless they directed or consented to it themselves. This presents certainly a novel question, being nothing more nor less than a claim that a party may legally and morally owe a debt and yet frame a contract so that its payment shall be wholly discretionary, and not subject to be enforced in the courts without his consent. It is not necessary to decide whether a provision of that kind would not be contrary to the principles of remedial justice as between the parties themselves, and therefore void; but whether so or not, the attempt to set up such a defense as against the creditors of the company who have entered into contracts with it without knowledge of any such stipulation, and whose only means of obtaining payment is by compelling stockholders to pay the balance due upon their stock, is without a parallel in judicial proceedings. Such a scheme I do not think ever has, or ever can, receive the sanction of the legislature or of the courts. A law which should deprive creditors of a corporation of all legal remedy would be invalid, as impairing the obligation of contracts. Curran v. Arkansas, 15 How. [56 U. S.] 394.

The insurance company became bankrupt by the losses sustained in the great fire in the city of Chicago, in October, 1871. Its means and capital consisted principally of these balances unpaid by the stockholders. It being unable to continue, the creditors proceeded against it in this court in bankruptcy. No assessment was made, according to the terms of the subscription, before the bankruptcy proceedings. The question therefore resolves itself into one of power of the bankrupt court. Such courts have original and exclusive jurisdiction to collect all the assets of the bankrupt, and to make final settlement and distribution of the bankrupt's estate. After the commencement of the proceedings in bankruptcy neither the chartered officers nor stockholders had any right to interfere with the collections or distribution of the estate. All power over the estate and the assets of the company became thereby vested in the bankrupt-court, and I think it necessarily follows that such court became vested with all the power and control over the assets that were previously vested in either the chartered officers of the company or the stockholders, or both collectively, and that court could, by virtue of its authority, make or direct any assessment or call necessary or preliminary to the collection of the assets, as fully, to all in-

tents and purposes, as the stockholders or directors could have done if the company had not gone into bankruptcy. It was held in Ward v. Griswoldville Manuf'g Co., 16 Conn. 593, that the authority of the directors to make calls upon stockholders was modal only, relating to the time and manner of payment, and that such duty might be performed by the court of chancery. If the court had the power to do what the directors ought to have done in that way, why can it not do what the directors and stockholders ought to have done as well? No reason for a distinction is perceivable. In Adler v. Milwaukee Patent Brick Manuf'g Co., 13 Wis. 61, Dixon, C. J., in discussing the liability of stockholders to pay for their stock upon call of the directors, says when the company is indebted "this duty of the directors to make the call is one of the highest of moral obligations," and further, "if by the willful or stubborn inaction of the directors or stockholders the company fails to meet its obligations and perform its duties (to make assessment), a court of equity will, on a proper application, afford the requisite relief."

It is not within the ingenuity of man to devise a scheme that will enable insolvent debtors and persons indebted to them to withhold from the creditors of such insolvents the assets which in equity and good conscience should be applied to the payment of such creditors. Courts of equity, by virtue of their inherent jurisdiction over trusts and frauds, will enforce the proper application of the capital stock of an insolvent corporation to the payment of its debts.

It is the province of courts of equity—and of the bankruptcy courts, which to a certain extent have co-ordinate power—to furnish adequate remedies to reach and administer insolvent estates, and to secure to their bona fide creditors the application of all the property of such insolvent, and to dissipate all schemes and devices for the prevention thereof.

In connection with this, in some of the cases it was proven, or offered to be proven, that the agents and officers of the company represented and assured the parties when they took the stock that no assessment would ever be made; that it was, in fact, non-assessable, and made other false and fraudulent statements in regard to the condition of the company, to induce the parties to take the stock. I hold such testimony inadmissible and as not constituting any defense as against the creditors of the company; that it was too late for the stockholders, after the company had become insolvent and the investment was found to be unprofitable, to avoid the liability on such grounds or pretense. The case of Ogilvie v. Knox Co. Ins. Co., 22 How. [63 U. S.] 380, I think fully sustains my ruling on that point. The parties, when they became stockholders, had full access to the books, and could have examined them and ascertained the condition of its affairs, and are chargeable, as between them and the creditors, with knowledge of the contents, and are therefore to be held as having possessed full knowledge of the affairs of the company, and, to avail themselves of any false representations which had been made should have withdrawn immediately from the company.

The defendants also objected to the order of the court sitting in bankruptcy, requiring the stockholders to pay the balance due and owing upon their stock, on the further ground that the court had no power to make such order without notice to each stockholder. If the court had the power to make the order, as I have attempted to show it had, I think it was discretionary with it either to require notice or not; at all events in this suit its order in this respect cannot be reviewed.

I think the stockholders, who are the integral parts of a corporation, may be considered as quasi parties to the bankruptcy proceedings to such an extent as to be bound by the order without notice. If they were dissatisfied with the order, they, by their relation to the bankrupt corporation, had such a standing in the bankrupt court as enabled them to move in that court to set aside the order, if improvidently made, or to apply for a review in the circuit court under section two of the bankrupt act. Having omitted their plain rights in that respect they are concluded by the order in these suits. It was suggested by some of the counsel that the call was for more than was necessary to pay the debts of the company. That question cannot be tried in this case. The order of the district court, it having jurisdiction over that matter, is conclusive, and not inquirable into collaterally. Lord Eldon says in Ex parte Dewdney, 15 Ves. 498, "that a commission in bankruptcy is nothing more than a substitution of the authority of the lord chancellor, enabling him to work out the payment of those creditors who could by legal action or equitable suit have compelled payment."

That being so, the bankruptcy court had the same authority and jurisdiction over this company and its effects as the chancellor would have had upon a bill filed to reach its property and equitable assets. In such a suit he would appoint a receiver, and could direct a receiver to make an assessment upon the stockholders without making them parties to the bill. Ogilvie v. Knox Co. Ins. Co., 22 How. [63 U. S.] 380. If the chancellor in such a case could authorize his receiver to make a valid assessment collectible by the receiver at law, I think a court of bankruptcy could do the same. I was not referred to, nor have I been able to find, a case where a court of chancery required a notice to the stockholders before making, or directing its receiver to make, an assessment upon the stockholders for balances due from them to the company, and therefore am forced to believe that no such rule or practice exists in a court of equity. Upon principle they might

as well claim that the stockholders should be personally notified of and allowed to defend all debts proven against the estate, as their interests would be much more affected by those than by an assessment.

The defendants, for a further defense, gave in evidence a resolution passed by the board of directors some time in the year 1870, releasing its stockholders from the payment of the eighty per cent. unpaid upon their stock, after which they issued certificates stamped "non-assessable." The certificates upon their face, however, stated that only twenty per cent. had been paid, and the balance was subject to call in the manner hereinbefore stated. This resolution was not communicated to the public, but only to the stock agents and person employed in disposing of the stock. The officers, in their report to the state auditor, showing the condition of the company, as required by the statute, made no reference to such a resolution, but stated in their report of December, 1870, that there was eighty per cent. unpaid upon its stock, and made no exception as to stock issued after the passing of that resolution. I ruled on the trial that this resolution, if valid, virtually reduced the capital of the company four-fifths, and that it was not binding upon parties who had insured without knowledge of its existence. Its object manifestly was to enable the stockholders to enjoy the profits of the business, if successful, and avoid liability, if unsuccessful—casting the hazards wholly upon the creditors. Subsequent reflection has confirmed my impression upon that point. To sustain it as against the creditors would be against the fundamental principles of law and justice, and without hesitation I pronounce it legally fraudulent and utterly inoperative.

A secret arrangement of that kind between stockholders is so palpable a fraud upon the creditors dealing with the company without knowledge of it, that I shall not spend time in further discussing it. But it was claimed in connection with this, by the defendants' counsel that it was good as between the company and the stockholders, and that the plaintiff, as the assignee of the company could only enforce such claims as the company might. Such is not my understanding of the authority of an assignee in bankruptcy. I think he represents the interests of the creditors, is a trustee for the benefit of the creditors, and any defense that would not be good as against them in an equitable suit is not maintainable as against an assignee in bankruptcy. His position is analogous to that of a receiver appointed by a court of chancery.

In some of the cases the question was raised as to whether there was any liability on the part of the stockholders to pay the nominal or par value of the shares of stock held by them. The liability of some of the defendants was direct, as some of them were original subscribers, and agreed to take and pay for their stock. In other cases the parties had purchased stock from third parties, and had taken an assignment of the certificate and surrendered it, and accepted a new certificate in their own names, whereby they became registered members of the corporation, and entitled to all the privileges and advantages of an original subscriber, and succeeded to all the liabilities, as well as the rights, of the original subscriber. Seymour v. Sturges, 26 N. Y. 134; Sagory v. Dubois, 3 Sanf. Ch. 466; Hartford & N. H. R. Co. v. Boorman, 12 Conn. 530; Huddersfield Canal Co. v. Buckley, 7 Term R. 36; Loomer v. Wheelwright, 3 Sanf. Ch. 161. The question as to whether there is any liability as against an equitable owner of stock, or whether the relation may be made out by any other evidence than the certificate and the company's stock book, is pending before me, in another case, and I do not now express any opinion thereon. I only hold that a purchaser of a certificate who surrenders it, and has one issued to him directly, and has his name entered upon the stock books, becomes subrogated to the rights and assumes the liability of an original subscriber to stock; that the acceptance of the certificate of which eighty per cent. was unpaid and subject to future call, created an implied obligation on his part to pay such balance, the same as an assignee of a lease is liable for rent directly to the landlord after assignment. Armstrong v. Wheeler, 9 Cow. 88; Churchwardens of St. Saviour's Southwark v. Smith, 3 Burrows, 1272; Eaton v. Jaques, 2 Doug. 461.

A question as to the sufficiency of the pleadings was raised by some of the defendants. I do not consider the objections well taken. In behalf of some of the defendants the motion was urged on the ground that the verdicts were contrary to evidence. I should have been as well satisfied if the verdicts in some of the cases had been for the defendants; but I do not think there is such a want of evidence to support them as to authorize me, in the exercise of a sound discretion, to set aside any of the verdicts on those grounds.

The motions by the defendants for a new trial are each and all denied.

NOTE. In an action against a stockholder for installments of his subscription the regularity of the organization of the company cannot be inquired into collaterally. Rice v. Rock Island & A. R. Co., 21 Ill. 93; Goodrich v. Reynolds, 31 Ill. 490. For the liability of a purchaser of stock, whose certificate has never been assigned on the books of the company, see Upton v. Burnham [Cases Nos. 16,798, 16,799, and 16,802].

The question of the liability of the stockholders of this company, was also decided by Judge Dillon, in the Minnesota district, who held substantially the same views as Judge Hopkins, supra. Payson v. Stoever [Case No. 10,863] June term, 1873. A similar ruling was also made by Judge Gary, of the superior court of Cook county, in a suit by the assignee against

Willins, a stockholder, the opinion being given after full argument, but never reported except in pamphlet form.

In the suits against the stockholders. in the circuit courts of Indiana. Judge Drummond, at the May term, 1873, held them liable for the assessment on their stock. Payson v. Withers [Case No. 10,864].