Okey, J,
Objection is made that it does not appear by tbe petition that the superior court had jurisdiction to appoint the receiver; but we think the court had jurisdiction to make the appointment in the manner it was made, and that mere irregularities as to the form in which jurisdiction was invoked can not be inquired into in this collateral way. The proceedings, indeed, are substantially in the form generally pursued. Godley v. Pugh, 29 Ohio St. 438. And the-objection that Baird and Thompson were not directors de jure is of no avail. They were directors defacto, and their acts were valid. Bartholomew v. Bentley, 1 Ohio St. 37, is-an extreme case, and in no way opposed to this view.
The defendants below moved the court for leave to file an amended answer, and the motion was overruled. The original answer had then been on file more than eighteen months. There can be no interference with the decision of matters of that sort, unless the record discloses manifest abuse of discretion, and here no such abuse is shown.
As to the form of the pleadings, concerning which there-has been much discussion, it is sufficient to say there.is no error in that regard for which we are willing to disturb the findings; that the issues are broad enough to support the-findings;. and that no actual fraud being shown, the ques *59 tion is, whether in matter of law the defendants below are-liable on their subscription, on the facts found by the superior court, or admitted.
The certificate of incorporation was acknowledged before a notary public. The statute required that it “ be acknowledged before a justice of the peace.” The State ex rel. v. Lee, 21 Ohio St. 662. Whether the defect could have been cured without a proceeding for the purpose under the act of 1859 (2 S. & C. 1172; Const., art. 2, § 28), or whether it was cured by force of the act of 1872 (69' Ohio L. 14), we need not determine, for the defendants below were estopped from setting up the defense. Lucas v. Greenville B. & S. Association, 22 Ohio St. 339.
The principal questions to be determined involve a construction of the acts relating to the increase of capital stock, and an act which is sometimes called the wincling-upact.
The act of 1861 (S. & S. 169), in force when the steps to increase the stock were taken, but now repealed (74-Ohio L. 183), provided, among other things, that a mining corporation, “ when organized, shall be a body corporate, having all the privileges, immunities, and powers conferred upon manufacturing companies, and shall be governed in all respects by the provisions of said (general corporation) act, and the other acts supplementary and amendatory thereto.” 1 S. & 0.271. Notwithstanding the strict construction given to the same language in the act of 1856-(Miami Coal Co. v. Wigton, 19 Ohio St. 560), we do not doubt this provision conferred on mining corporations the-same power to increase stock that had been conferred on manufacturing corporations by the act of 1854 (1 S. & C. 369) which was repealed in 1865 (S. & 0. 237). The act of 1872 (69 Ohio L.24), amended in 1873 (70 Ohio L. 37), conferred no new power in this respect.
■ The question arises whether the case is governed by the-act of 1854 or the act of 1865. In Stall v. Macalester, 9 Ohio, 19, it was held that express reference in an act to a specified statute for the form to be observed in proceedings *60 under the act, virtually incorporates the old statute into the new, and that if the former be in general terms repealed, it will, nevertheless, remain in force as to proceedings under the act. But where; as in this case, the reference is general to an original and supplementary and .amendatory acts, we must look to the law delegating the power and regulating the mode of its exercise in force at the time the power is invoked. Kugler’s Appeal, 55 Penn. St. 123.
The statute to be construed, then, is the act of 1865 (S. .& S. 237). Changes have been made in it (69 Ohio L. 24), but they do not affect this case. That act, thus made applicable to mining companies (S. & S. 169, 170), provides that if the directors desire to increase the capital stock, they shall call a meeting of the stockholders, giving at least thirty days’ previous notice in some newspaper published at the company’s place of business, or, if none be published there, then by notice personally, or by mail, to each stockholder. If the stockholders owning two-thirds of the stock vote in favor of the increase, the directors shall apportion the increase, pro rata, to the stockholders, in proportion to their stock; and failure for thirty days to pay for the stock so apportioned is a declination of the right to take it, which gives the directors power to dispose of it ■otherwise, as the by-laws may prescribe.
“ Sec. 4. Upon the full payment in-money of such inurease of capital, the directors shall, under their hands, and verified by their affidavit, or that of a majority of them, certify the same to the officer designated for that purpose by the law under which said company was organized, who shall ■dispose thereof in the manner provided by law for the original certificate of the organization of such company. Each certificate of such increase shall distinctly state that the whole amount thereof has been paid to such company, .and that no note, bill, bond, or other security has been taken for any part thereof, and that the credit of such company has not been used, directly or indirectly, to raise the funds to pay the same, or any part thereof.”
*61 The stockholders are also individually liable, under the-same act, to a further sum equal in amount to their stock,. “ and any unpaid installments thereonand they are liable, moreovei’, individually, for all debts due to the employes.
To properly construe this act is a task not free from difficulty. Are the steps to increase the capital stock ineffectual, unless the whole amount of the increase determined on is actually paid to the company in money, and the certificate contemplated in the act is furnished ? If that is the pi’oper construction, one who pays money for stock would have no other right, in case the whole of the increase-is not taken, than to recover from the company the amount paid. We do not think we are required so to hold; but,, on the contrary, a fair construction of the act, in connection with other statutes, seems to be that when, at a meeting called as provided in section 2, the stockholders owning two-thirds of .the capital stock vote in favor of the increase, and, the stock having been apportioned, a stockholder refuses for thirty days to pay the corporation for the-portion of stock allotted to him, or any part of.it, “the directors may dispose of the same in such manner as the by-laws thereof may prescribe.” The capacity of the company to' dispose of the stock is complete on such refusal, and the contract of one who thus agrees to take any part of such increased capital stock may be enforced against him. It follows that when he pays the money he becomes-a stockholder to the extent of his shares, even if the residue of the increased stock is never taken. Of course, as the whole amount voted by the stockholders in this case was never subscribed, there was no authority to make the certificate provided for in section 4 ; but the steps there provided are simply to afford evidence that the proceeding to-increase the amount of the capital stock, to the full extent voted by the subscribers, has been consummated, so that the fact may be properly made known to the public ; and, until that is done, the company can not rightfully transact business on the basis of such increased capital. Whether *62 ■the act of 1854 (1 S. & 0. 369), was susceptible of the same .•construction is more doubtful.
While, therefore, an agreement regularly made to take .shares of such increased stock would be mutually binding ■ on the company and the subscriber, even if the whole im crease voted is never taken, it is not to be denied that the proceedings in this case were irregular. We will not determine whether the state alone can set up these irregularities (as to which see Pullman v. Upton, 96 U. S. 328), but •whether, notwithstanding such irregularity, the agreement-may be enforced against the subscribers. No notice of the •stockholders’ meeting was published. Only part of the increased stock was apportioned to the original stockholders; .and, besides, the new as well as old subscribers understood that the part so apportioned was not to be paid for. The remaining shares were offered for sale to any who would subscribe, without apportionment, and without delay ; and so far the statute was disregarded. But the existence of these irregularities is not decisive of the question as to the validity of the subscription. •
The record shows that Clarke & Hawes — indeed, all the ¡■subscribers to the increased stock, except one — had actual notice of the stockholders’ meeting at which the increase was voted, and the one who had no actual notice accepted the stock apportioned to him and still retains it. The in.strument subscribed by the plaintiffs in error contained the information, that two hundred and forty shares of the increased stock had been divided among the original stockholders, who were not to pay for the same. The plaintiffs in ■ error were credited with their stock on the books of the company, and it has stood in their names ever since they made the subscription. They made repeated payments of installments to the directors, without objection. They received • coal from the company at reduced rates, in accordance with their contract of subscription and by reason of their ownership of the stock. They were deprived of no right accorded to other stockholders. They were aware, we think, that the company was representing that its capital stock was ■.fifty-six thousand dollars, and that their subscription was *63 part of that amount. Debts were contracted on the faith -of the increased stock. If they did not know the fact, it •was their own fault. Certain it is, that they made no protest, no complaint, during the time when the company was prosperous. Equally certain it is, that now, when the company is insolvent, they will not be heard to protest or complain. Trumbull Co. M. F. I. Co. v. Horner, 17 Ohio, 407; Voorhees v. Receiver, etc., 19 Ohio, 463; Upton v. Hansborough, 3 Bissell, 417; Paysen v. Withers, 5 Bissell, 269; Paysen v. Stoever, 2 Dillon, 427 ; Upton v. Tribilcock, Sanger v. Upton, 91 U. S. 45, 56; Craig v. Cumberland, etc. School, 72 Penn. St. 46 ; Greene’s Brice on Ultra Vires, 444, et seq. Nor are we prepared to say that the original stockholders are not liable for the two hundred and forty shares which they appropriated to their own use. It will be time enough to -decide that question when it is directly presented.
The powers and duties of the receiver are all defined in the winding up act of 1867. S. & S. 243; 72 Ohio Laws 139. It is his duty, among other things, to collect all outstanding liabilities, including moneys due from subscribers for stock; but the company is dissolved as an insolvent corporation, and collections from stockholders are only made for the purpose of paying the liabilities, and adjusting the affairs of the corporation. The receiver is the officer of the court, and at all times subject to its order and direction; and while the judgment at law, rendered against the plaintiffs in error will be permitted to stand, it will be the duty of the court to see that no injustice is done to them. All other responsible persons indebted to the corporation for stock, should be compelled to contribute, so that no stockholder, in the payment of the debts, and adjusting the affairs of this insolvent corporation, will be compelled to pay more than his just proportion. Sanger v. Upton, supra. Manifestly it would be a less burden on these debtors for the receiver to collect from them only their just proportion than to collect the whole amount for which they are liable, and refund to them the excess on final settlement and distribution. But that matter must be left to the discretion of the court having control of the conduct of the receiver. Nor *64 do we decide whether the rights of stockholders, inter sese,. may be determined in that proceeding.
Young Gottsehall, for plaintiffs in error.
A. A. Thomas and D. A. Haynes, for defendants in error.

Judgment affirmed,.

H. Eerneding & Son v. Alfred A. Thomas, Receiver.
Jacob S. Gary v. Same.
William Sander v. Same.
Error to the Superior Court of Montgomery county.
Okey, J.
In these cases all the grounds exist for holding the plaintiffs in error liable on their subscriptions that are stated in Clarke & Hawes’ case. And in each of them we-find additional grounds for the application of the doctrine of estoppel. Eerneding was a director; Gary asked for and received a certificate for his shares of stock; and Sander, as well as Eerneding and Gary, voted at elections for-directors.

Judgments affirmed.