The order appealed from should be reversed, but without costs.

INGRAHAM, P. J., and BARNARD, J., concurred.

## WHITE *a.* ROSS.

*Court of Appeals ; September Term,* 1860.

ESTOPPEL TO DENY INCORPORATION.—DEFECTIVE ORGANIZATON CURED BY SUBSEQUENT STATUTE.—MUTUAL INSURANCE COMPANY ORGANIZED IN DEPARTMENTS.—RECEIVER'S ASSESSMENT.

Persons who make contracts with a corporation *de facto,* cannot deny its legal existence.

Any errors or informalities in the mode of the formation of a corporation, under a general act for the organization of corporations, are cured by a special act recognizing the existence of the corporation, and changing its name.

A mutual insurance company, organized under the General Insurance Companies Act of April 10, 1849, may divide its risks into classes, according to the degree of hazard, and assess the premium notes only for the payment of the losses happening in the class to which such notes belong.*

All the notes of a mutual insurance company constitute its capital stock ; and, although the notes of one department must be first assessed to pay the losses of that department, yet, if they are found not sufficient, and any thing remains in the other department beyond paying the claims upon it in that branch, resort must be had to those remaining assets until the whole are exhausted. If the necessity exists, resort must be had to the entire fund of the company.

Appeal from a judgment.

This action was brought by Justus White, receiver of the

---

* Overruling Thomas *a.* Achilles (16 *Barb.,* 491).

Union Insurance Company, against Giles Ross and others, on a premium note. The company was originally incorporated as a Mutual Insurance Company, under the act of April 10, 1849 (*Laws of* 1849, 441, ch. 308), under the name of the Union Mutual Insurance Company.

By a special act passed in 1851 (*Laws of* 1851, 775, ch. 395), the charter was amended by omitting the word "mutual" from the name of the company, and limiting the number of directors. The plaintiff was subsequently appointed receiver of the corporation, and as such brought this action. He recovered judgment in the Supreme Court, and the defendants appealed. The other facts appear in the opinion of the court.

*Cox & Avery*, for the appellants, insisted that the company was not legally incorporated, and that the proof showed an organization of their company into two separate companies, in evasion of the statute, and that the plaintiff's assessment was void.

*Henry R. Mygatt*, for the respondent.

By the Court.—Bacon, J.—Two questions only are made by the defendants' counsel upon this appeal. The first is, that the company, of which the plaintiff is receiver, was not duly incorporated. There are two conclusive answers to this objection. In the first place, the defendants were members of the corporation. They became such members when they delivered the note upon which this suit is prosecuted, and received their policy. Having thus dealt with it as a corporation *de facto*, they cannot now be heard to question the validity of the organization. That can only be impeached by the sovereign power of the State.

But in the second place, if there were any errors or informalities in the mode of its formation, they were cured by the law of 1851, which recognized the existence of the company and changed the corporate name. This is the highest exercise of the sovereign power by which, in effect, the people speak, and waiving the defects of the organization, if such exist, declare the corporation to have existence not only, but to be endowed with all the faculties necessary to corporate life and

action. (Buffalo & N. Y. City R. R. Co. a. Dudley, 14 *N. Y.*, 336.) The power which prescribes the formalities to be observed in creating a corporation is able to dispense with them. This is expressly adjudged in Black River & Utica R. R. Co. a. Barnard (31 *Barb.*, 258).

The second objection to a recovery taken by the defendants' counsel is, that the assessment which was and ought to be enforced in this suit, not being upon the whole capital, but on a part only, was void. The company of which the plaintiff is receiver, it seems, divided the applications for insurance into two classes, one of which was termed the commercial, the other the farmers' class; the rates being adjusted upon different scales in respect to what were supposed to be the different degrees of hazard of the two classes, and the notes were only to be assessed for losses in the department to which they belonged. This was done in accordance with the 11th section of the charter of the company, which provides in express terms for such a division.

The ground of objection to this, is alleged to be that in effect it creates two organizations: that it destroys the element of what is called mutuality, and does not subject the whole assets *in solido* to the payment of all the risks assumed. These objections are in part unfounded in fact, and so far as such an arrangement is supposed to contravene the spirit of the act of 1849, authorizing the formation of insurance companies, the question is, I think, disposed of by the decision of this court in the recent case of Mygatt a. N. Y. Protection Insurance Co. By the 11th section of the act of 1849, the corporators were authorized to declare in their charter "the mode and manner" in which they were to exercise their corporate powers. This was held, in that case, to transfer to the companies which should organize under the act full legislative control over the subject, and invest them with power to provide for any kind of insurance permitted by the act, and to regulate what may be called their internal economy, in such way as to the directors should seem prudent and best, so long as they did not contravene any express provision of the act under which they organized.

The provision in the charter of this company is not in conflict with any provision of the act of 1849, that has been pointed out; and it cannot, with any propriety, be said that there are

two organizations. The division of risks into classes is only one of the "modes or manners" in which the company chooses to transact its business, and has not as much diversity as the two modes of insurance on the cash and premium-note systems, which, it is now settled, can be united under one organization. "If," as is said by Judge Paige, in Sheldon *a*. Roseboom (29 *Barb.*, 309, *note*), "the capital to be applied to the payment of losses is to be divided, so are the risks. If the capital is less for each department, so are the hazards."

Both classes are to be assessed by the receiver, and in truth, I suppose it cannot be doubted, that all the notes of the company constitute its capital, and that, although the notes of one department must first be assessed to pay the losses in that department, yet if they are found not to be sufficient, and any thing remains in the other department beyond paying the claims upon it in that branch, resort must be had to those remaining assets until the whole are exhausted. And this is an answer to that part of the objection which insists that the whole assets must be applied to the payment of all the risks assumed by the company. If the necessity exists, resort must be had to the entire fund. It is precisely the principle which subjects the premium notes to contribution for losses on the cash policies, after the funds of that department have all been applied.

The judgment must, in my opinion, be affirmed.

All the judges concurred.