Present—TALCOTT, P. J., and SMITH, J.; HARDIN, J., not sitting.

Judgment and order reversed and new trial ordered, costs to abide event.

---

THE COMMERCIAL BANK OF KEOKUK, IOWA, APPELLANT, v. CHRISTIAN PFEIFFER AND OTHERS, RESPONDENTS.

22 327
143a 543

22h · 327
68 AD¹⁰336

*Condition, upon which a promise to accept a draft is made, must be proved— One who discounts a draft, with a bill of lading attached, acquires title to the property shipped— What allegations do not show damages to have been caused by the default of the other party—The failure of the plaintiff to separately state and number different causes of action is not a ground for a nonsuit— When the law will imply a contract, though an express one has been made— When a party dealing with a de facto corporation cannot deny its existence.*

The complaint herein alleged that prior to January 11, 1877, the defendants had agreed with the plaintiff, that if one Quick should purchase cattle and hogs, and draw a sight draft upon them, for the cost thereof, less the sum of $50 for each car load, and attach thereto bills of lading showing that such cattle and hogs were shipped to them, that then, upon being notified of the shipment and of the amount of the draft, the defendants would pay the same on sight; that on January 11, 1877, the said Quick shipped to

# 328     COMMERCIAL BANK v. PFEIFFER.

the defendants eighty-six cattle and one hundred and thirty-five hogs, and attached the bills of lading therefor to a sight draft for $5,778, drawn by him upon the defendants to the order of the plaintiff's cashier; that the plaintiff advanced the money to Quick for the purchase of the cattle and hogs, and that, as it believed, the amount of the draft was less than their cost by at least $50 on each car load; that at the time of making such advance Quick sold and delivered the said cattle and hogs to the plaintiff and agreed that it should be and continue the owner thereof until repaid the money advanced by it; that upon presentation of the draft the defendants refused to pay the same; that they subsequently paid to the plaintiff from the proceeds of the shipment the sum of $5,249.47, and converted the balance of such proceeds to their own use, and the plaintiff prayed judgment for the damages thereby sustained.

Upon the trial the defendants claimed that the amount for which the draft was drawn was the full cost of the cattle and hogs shipped, and that the sum of $50 for each car load thereof had not been deducted therefrom as. agreed upon.

*Held*, that to render the defendants liable upon their promise to accept and pay the draft, performance of the conditions upon which the promise was made must be proved by the plaintiff, and that, having failed so to do, no recovery upon the draft could be had by it.

That the plaintiff, by discounting the draft, with the bill of lading thereto attached, acquired title to the cattle to the extent of the amount so advanced by it, and that the defendants were bound to account to it for the proceeds of the property shipped, after deducting therefrom their expenses and commission.

That the allegations of the complaint were sufficient to entitle the plaintiff to recover the proceeds of the property in this action.

The defendants, by their answer, after denying certain of the allegations of the complaint, set up, "as a second answer, defense and counter-claim," the making of the said conditional agreement to pay the drafts for the price of the cattle, and that on the 12th day of December, 1876, the plaintiff notified the defendants that it had discounted a draft, accompanied by a bill of lading drawn by Quick, under the said arrangement, for $5,025; that the defendants, relying on the good faith of the plaintiff in seeing that the draft was drawn only for the actual cost price of the said cattle, less $50 per car load, and believing the same to have been so drawn, paid the draft; that the cattle realized only $4,644.65, and the defendants sought to set off the $380.35 so lost on that shipment.

*Held*, that the facts stated did not constitute a counter-claim, as they did not. show that the damages, if any, sustained by the defendants, were caused by the failure of the plaintiff to see that the $50 per car load was deducted from the price of the cattle.

When a complaint contains a statement of the facts necessary to constitute two distinct causes of action, the failure of the plaintiff to separately state and number them, cannot be urged as a ground for a nonsuit at the trial; if there be any doubt as to which cause of action the plaintiff intends to rely upon, the remedy of the defendant is by a motion to make the complaint more definite and certain.

The rule that where there is an express contract the law will not imply one, is only applicable to those cases in which the express contract and that implied by law relate to the same subject matter, and where the provisions of the express contract are intended to control and supersede those which would otherwise be raised by implication.

A party who has assumed to contract with a *de facto* corporation by its corporate name, cannot afterwards, in an action brought by it upon such contract, deny its legal existence.

APPEAL from a judgment in favor of the defendants entered upon the trial of this action by the court without a jury.

*Sprague, Milburn & Sprague,* for the appellant.

*H. C. Day,* for the respondents.

TALCOTT, P. J. :

The complaint in this case alleges that prior to January 11, 1877, the defendants, under the copartnership name of "Pfeiffer & Windsor Brothers," agreed with the plaintiff, that if one O. Quick should draw on them at sight for the cost of cattle and hogs, to be purchased by him, less the sum of $50 to each car load of such cattle and hogs, and should attach to each draft a bill of lading, showing that said cattle and hogs were shipped to them, the defendants, the said defendants, on being notified of the shipment and the amount of such draft, would pay the same at sight. That on the said 11th day of January, 1877, the said O. Quick drew and delivered to the plaintiff a sight draft on the defendants, requiring them to pay to the order of the plaintiff's cashier, the sum of $5,778, and charge the same to the account of eighty-six cattle and one hundred and thirty-five hogs, and that at the time said draft was drawn the said cattle and hogs were duly shipped, to be forwarded to the defendants, and a bill of lading showing such shipment was attached to the draft, and the defendants were duly notified of such shipment and the amount thereof. That the plaintiff advanced the money to said Quick for the purchase of eighty-six cattle and one hundred and thirty-five hogs, and that as the plaintiffs believe the amount of the draft was less than the cost of such cattle and hogs by the amount of $50 or more to each car load thereof.

That at the time of such advance to Quick he sold and delivered the said cattle and hogs to the plaintiff, and agreed that the said plaintiff should be and continue the owner thereof, and that the same should continue the property of the plaintiff until the payment to it of the money so advanced by it; and that the said draft was afterwards duly presented to the defendants for acceptance and payment, but they refused to pay the same, except that on January 20, 1877, they paid from the proceeds of the said shipment the sum of $5,249.47, and converted the balance of such proceeds to their own use; and that by reason of the premises the plaintiff has been damaged in the sum of $1,000, and prays judgment for the damage sustained, with costs.

The defendants answer, denying all the allegations of the complaint, except as therein admitted, and then they admit the partnership of the defendants.

They then allege in substance "as a *second answer, defense and counter-claim,*" the agreement by which defendants agreed to pay Quick's sight drafts, and that under said agreement, certain cattle and hogs were shipped to the defendants for sale from time to time, and drafts drawn upon the same which were paid by the defendants, and as the defendants believe such drafts were, at least, for the whole cost of such cattle and hogs without any deduction of $50 per car load, and that the defendants relied upon the honesty, good faith and care of the plaintiff, to see that the drafts should be and were drawn only for the actual cost of the said cattle to Quick, less the sum of $50 per car load, and "on the 11th day of December, 1876, the defendants were notified that the said Quick had drawn a draft upon said defendants for $5,025, which the plaintiff had discounted, and that the same was accompanied by a bill of lading of three hundred and thirty-four hogs and sixty-seven sheep, consigned to the defendants under said arrangement, by which said draft was to be drawn at the actual cost price of said hogs and sheep less $50 per car load. That relying on the good faith and honesty of the plaintiffs in seeing that said draft was drawn only for the actual cost of said hogs and sheep less $50 per car load, and believing the same to have been so drawn under

said arrangement or agreement aforesaid, the said defendants paid the same, the said hogs and sheep realizing only the sum of $4,644.65, by which these defendants were out the sum of $147.18 on said transaction."

They then allege the making and delivery to the plaintiff of the said draft for $5,778 on January 11, 1877, that the same was accompanied by a bill of lading of eighty-six cattle and one hundred and thirty-five hogs; that the said plaintiff claimed and pretended that the same was drawn under the said agreement for the purchase price of said cattle and hogs, less $50 per car load; and, relying on the good faith of the plaintiff in drawing and discounting said draft under the agreement, the defendants received said cattle and hogs and sold the same, realizing therefor the sum of $5,631.82, but that both the said drafts were not drawn under the said agreement, but were in fact, drawn for the full price of said hogs, sheep and cattle, and that defendants have paid to the plaintiff the sum of $5,249.47, being the proceeds of said cattle [and hogs] less the sum of $380.35, the loss on the December shipment aforesaid.

The action was tried before the Hon. ALBERT HAIGHT, one of the justices of this court, at the Erie Circuit, without a jury. The plaintiff gave in evidence a letter from the defendants, as follows, viz.:

"EAST BUFFALO, N. Y., April 25, 1876

"EDMUND JAEGER,

"Ca. Commercial Bank, Keokuk, Ia.

"Dear Sir: We will pay O. Quick's drafts at sight with bill of lading attached, and $100 deducted from the cost as margin, cattle consigned to our care here, and we to be notified of shipment and amount of draft by telegraph. The above will insure your drafts prompt payment to the amount of cost of ten cars a week.

"Your truly,

"PFEIFFER & WINDSOR BROS."

Also another letter from the defendants to the plaintiff as follows:

"EAST BUFFALO, N. Y., November 8, 1876.

"COMMERCIAL BANK, KEOKUK, IOWA.

"Please suggest a $50 margin a car to Mr. O. Quick.   Our letter of credit calls for more, but we will be content with above.

"Yours truly,

"PFEIFFER & WINDSOR BROS."

Also the draft described in the complaint, on which was indorsed a payment under date January 28, 1877, for $5,249.47.

The plaintiff then read in evidence portions of the answers of the defendants, to wit, that portion setting up the said arrangement to pay O. Quick's drafts at sight for the cost of cattle and hogs to be shipped to the defendants for sale, less the sum of $100 per car for each car load of cattle and hogs so shipped, and that portion of said answer in which the defendants alleged the making of said draft for $5,778 as described in the complaint, and stating that the same was accompanied by a bill of lading for eighty-six cattle and one hundred and thirty-five hogs, and that the plaintiff, pretended that the same was drawn under the said agreement for the cost of cattle and hogs to be shipped to the defendant for sale, less the sum of $100 per car for each car load of cattle and hogs so shipped, and that portion of said answer in which the defendants alleged the making of said draft for $5,778 as described in the complaint, and stating that the same was accompanied by a bill of lading for eighty-six cattle and one hundred and thirty-five hogs, and that the plaintiff pretended that the same was under the said agreement and that the draft was drawn for the purchase price of said cattle and hogs, less $50 per car load, and which furthermore stated that the defendants received the said cattle and hogs and sold the same, realizing therefor the sum of $5,631.82.   And the plaintiff proved that the amount unpaid on the said draft with interest to the day of trial was $581.67, and rested.

The defendants then moved for a nonsuit and stated the following grounds for such motion.

1st. That the plaintiff has failed to made out a cause of action.

2d. The plaintiff has failed to prove its incorporation, or to show it has a right to maintain the action.

3d. The plaintiff has failed to show that the terms and conditions upon which the defendants agreed to accept said draft have ever been performed. That the plaintiff has failed to show that the amount of said draft was less than the cost of said cattle and hogs, by the amount of $50 for each car load thereof.

The motion for a nonsuit was denied, the court stating that it was satisfied that the plaintiff had not made out a cause of action on the draft, for the reason that it had not shown that it was drawn for $50 less upon each car load than the purchase price of the cattle, but intimated its opinion that the cattle having been received by the plaintiff and sold by the defendants as commission agents, they were liable to the plaintiff for the net proceeds of such sale up to the amount of the draft which had been discounted by the plaintiff. The defendants then called as a witness Millard F. Windsor, one of the defendants, and proved by him that the defendants received the eighty-six cattle and one hundred and thirty-five hogs, and that there were six car loads thereof—and that said cattle and hogs were received under the arrangement specified in the two letters of the defendants, one dated on April 25, 1876, the other November 8, 1876, and that the defendants received on the sale of said eighty-six cattle and one hundred and thirty-five hogs $5,631.82 over and above all charges and commissions. The defendants also proved that on the shipment of December 12, 1876, under the same arrangement, there were three hundred and thirty-four hogs and sixty-seven sheep received by the defendants, shipped by Quick, and a draft drawn against them for $5,025, and that the amount for which the sheep and hogs shipped December 12, netted at the sale by defendants, was $4,644.65, the difference being $382.35.

The defendants' counsel then renewed the motion for a nonsuit, and the trial judge delivering a written opinion in the case, but without any findings of fact, otherwise than the following, to wit, "I find from the admitted facts in the complaint and answer in this cause, as a conclusion of law therefrom, that the defendants are entitled to a judgment against the plaintiff dismissing said complaint, with costs." A judgment was accordingly entered.

We think the disposition of the case at the Circuit was correct,

so far as the objection taken on the motion for a nonsuit, on the ground that the plaintiff had not shown itself to be a corporation is concerned.

It is well settled that the parties who have assumed to contract with a corporation *de facto*, as such, cannot afterward, in an action upon such contract, deny the legal existence of the corporation. (*White* v. *Ross*, 15 Abb. Pr., 66 ; *White* v. *Coventry*, 29 Barb., 305 ; *Congregational Society* v. *Perry*, 6 N. H., 164 ; *Williams* v. *Cheney*, 3 Gray, 215.) The defendants assumed to contract with the plaintiff by its corporate name.

The plaintiff was not entitled to recover upon the promise to accept Quick's drafts at sight, contained in the defendants' letter of April 25, 1876, supplemented by the letter of November 8. The statute on the subject is: "An unconditional promise in writing to accept a bill before it is drawn, shall be deemed an actual acceptance in favor of every person who, upon the ·faith thereof· shall have received the bill for a valuable consideration." (1 R. S., 768, § 8.)

The performance of the condition is a condition precedent to the liability. (*Mulhall* v. *Keenan*, 18 Wall., 342 ; *Bank, &c.* v. *Gibson*, 5 Duer, 574 ; *Nixon* v. *Palmer*, 4 Selden, 398 ; *Merchants' Bank of Canada* v. *Griswold*, 72 N. Y., 472.)

In order, therefore, to charge the defendants with liability under the statute as an actual acceptor of the bill, it was necessary to establish that it had been drawn within the conditions prescribed by the defendant's letters, and there was no proof showing that the amount of the bill was drawn for $50 less than the purchase price at which Quick, the drawer, had bought the cattle and hogs shipped to the defendants. There was no evidence that the draft accorded with the conditions. But the delivery of a bill of lading, with the intent to pass the title to the goods mentioned therein, has the effect to pass such title.

The ordinary mercantile transaction of getting a draft on the consignees named in a bill of lading discounted, and attaching the bill of lading to the draft, in the absence of any further explanation, affords *prima facie* evidence of such intention to pass the title to the goods mentioned in the bill of lading to the extent of

the amount called for by the draft. (*City Bank* v. *R. W. & O. R. R.*, 44 N. Y., 136; *Bank of Rochester* v. *Jones*, 4 Id., 497; *First National Bank of Cincinnati* v. *Kelly*, 57 Id., 34.)

Therefore, it would seem that the defendants were accountable to the plaintiffs for the proceeds of the cattle and hogs received at East Buffalo by the defendants, and sold by them, less the expenses and commissions, in a proper form of action; but the learned judge at the Circuit held in regard to this, that the general rule of law is, that where an express contract is alleged, the law will not imply a contract.

This is true, but it can be applicable only to a case where the express contract and that implied by law relate to the same subject matter, and where the provisions of the express contract were intended to control and supersede those which would otherwise be raised by implication.

An implied contract is one which reason and justice dictate, and which the law therefore presumes that every man undertakes to perform, and in implied contracts the law implies from the antecedent acts of persons, and from general usage and custom, what the obligations of such persons are to be; whereas, if an express contract is made, the parties themselves thereby assume to define what their obligations are to be.

In implied contracts it is held that particular acts or existing facts give rise to particular duties or liabilities. "The idea of a contract implied by law is a legal fiction, invented and used for the sake of the remedy, to enforce the performance of a legal duty."

Where one has received and assumed to sell, as agent of the owner, the personal property belonging to another, the law raises an implied contract, that he will account to the owner for the proceeds.

Though it is probable that the defendants would have looked to the proceeds of the shipment of cattle and hogs to reimburse themselves for the payment of Quick's draft, if it had been accepted and paid, yet that was not a part of the express agreement between the plaintiff and defendants. The defendants themselves, by their refusal to accept the draft, have declared that it was not drawn within the purview of the arrangement. They therefore stand in the

same position as if no draft had been drawn by Quick against the shipment. They have received and undertaken to sell the cattle and hogs of the plaintiff, and it would be most inequitable to allow them not only to refuse to accept the draft, but to receive and sell, and convert to their own use, the proceeds of the shipment against which it was drawn.

.The complaint is somewhat ambiguous in its character, and leaves it to a certain extent uncertain whether the action was brought to recover the amount of the draft as upon an acceptance thereof under the statute, or to recover for the proceeds of the cattle and hogs received and sold by the defendants; but it nevertheless avers that the cattle and hogs "were sold and delivered to the plaintiff" by Quick, and that he agreed "that the plaintiff should be and continue the owner thereof, and that the same should be and continue the property of the plaintiff, until the payment to the plaintiff of the money advanced by it" to Quick for the purchase thereof, and that the said cattle and hogs were received by the defendants and sold as the cattle and hogs belonging to the plaintiff.

The defendants apparently so understood it, and undertook to account for the proceeds, as they say, by deducting the loss on the December shipment and paying up the balance.

The plaintiff also alleges the drawing of the draft, and that defendants refused to accept or pay the same, but does not claim, in express terms, the payment of the draft, but damages "by reason of the premises.".

It might be doubtful under the complaint whether the plaintiff intended to proceed on the draft, or for the proceeds of the sale of the cattle, but we cannot say that it does not contain a statement of the facts constituting a cause of action, which averments were wholly immaterial to an action to recover on the draft as an acceptance. In fact the complaint appears to contain the statement of the facts necessary to sustain two distinct causes of action, but we do not think that the failure to state them separately and by number, is a matter which can be taken advantage of on the trial; but if there can be any doubt as to which cause of action the plaintiff intends to rely upon, the remedy is by a motion to make the complaint more definite and certain.

There remains to be considered the effect of a portion of the statement in the answer of the defendants, which they set up as "a second answer, defense and counter-claim to said complaint," which, not having been replied to, it is claimed must be taken to be true. This answer is obnoxious to the same objection which the learned justice at the Circuit suggests as to the complaint, viz., that the counter-claim alleged to be contained in it and the defense, are not separately stated, and moreover the form of the answer is such that the fact that it contained any allegations which were set up as a counter-claim was likely for this reason to be overlooked; still, we think that the remedy is, like a similar objection to the complaint, to be remedied by a special motion.

What is insisted on as a counter-claim consists in this: after the statement of the conditional agreement by which the defendants bound themselves to the plaintiff to pay Quick's sight drafts, for the purchase price of cattle less $50 per car load, &c., of the allegations in substance, that on December 12, 1876, the plaintiffs notified the defendants that they had discounted a draft drawn by O. Quick under the said arrangement, for $5,025, and that the same was accompanied by a bill of lading for two hundred and thirty-four hogs and sixty-seven sheep consigned to the defendants, and that the defendants, relying on the good faith of the plaintiff in seeing that the draft was drawn only for the actual cost price of said hogs and sheep less $50 per car load, and believing the same to have been so drawn, accepted and paid said draft, the said hogs and sheep realizing only the sum of $4,644.65, "by which the defendants were out the sum of $147.18." The sum last named is evidently a misprint or a mistake, as appears by the following statement in said answer: "That said defendants paid to the said plaintiff the sum of $5,249.47, being the proceeds of said cattle (and hogs) less the sum of $380.35 loss on the December shipment before mentioned."

We do not think the said allegations which are claimed to set up a counter-claim, contain sufficient allegations for a cause of action. Conceding that in point of fact the said draft for $5,025 was drawn for the full cost price of the said shipment of December

12, 1876, there is no allegation that by reason of such fact the defendants suffered any damage, nor elements stated from which damage may be inferred.   To put the most liberal construction on the language of the defendant's answer it amounts to an allegation, that having paid the said draft for $5,025, believing it have been drawn in accordance with the agreement, they only realized upon a sale of the sheep and hogs against which it was drawn, the sum of $4,644.65.   To say that the difference between these two sums was the damage sustained by the plaintiff, in consequence of the plaintiff discounting the draft in question is clearly a *non sequitur*. The result might have arisen from a deterioration in the price or value of the animals shipped, or from negligence of the defendants themselves.   And there is no express averment, and it does not appear how the plaintiff sustained any damage resulting from the fact that the plaintiff had discounted, and the defendant had paid a draft drawn for the actual cost of the of the hogs and sheep without any deduction of $50 from each car load thereof; and the pretended cause of action which the defendants set up in their answer appears to be a mere denunciation of the plaintiff for having permitted Quick to overdraw, without stating what particular sum was overdrawn, whether $1 or $1,000, or showing in what manner the defendants had or might have suffered damage thereby.   For this reason, even if the defendants were not estopped by the acceptance and payment of the draft to make any such reclamation, we think the defendants were not, upon the pleadings, entitled to recover of the plaintiff, the sum of $380.35 by way of offset to the plaintiff's claim for the net proceeds of the cattle and hogs shipped on January 11, 1877, which is the result of the disposition of the case at the Circuit.

The findings of facts are wholly insufficient to authorize the judgment, and besides they are not separately stated and in detail, as required by the statute.

Judgment reversed and a new trial ordered, costs to abide the event.

Present—TALCOTT, P. J., SMITH and HARDIN, JJ.

Ordered accordingly.