THE FIRST NATIONAL BANK OF BATAVIA, Respondent, *v.*
HORATIO N. EGE et al., Appellants.

By taking a transfer of a bill of lading from the consignor, and discounting a draft upon the faith of it, the transferee acquires title to the goods described therein to the extent of the draft discounted, which is paramount to the claim of any other party, at least, unless such party has, in good faith, parted with value, relying upon possession of the property lawfully acquired.

When a consignee of property, to sell, accepts drafts upon the faith of such consignment, he acquires the right to sell the property and apply its proceeds in payment of such drafts, but if such proceeds are insufficient for that purpose, he must rely upon the responsibility alone of the drawee to pay any deficiency.   By the mere receipts of subsequent shipments he acquires no lien thereon to the prejudice of those who have advanced money upon them and taken transfers of bills of lading to secure such advances.

Where duplicate bills of lading are issued by a carrier, one of which is attached to a draft procured to be discounted by the consignor, and the other forwarded to the consignee, the possession of the latter gives the consignee no title to the property, but simply confers upon him the right to receive and hold it, subject to an accounting with the true owner when he shall appear; and if, before incurring liabilities upon the strength of such consignment, the consignee receives notice of its previous transfer, he cannot, thereafter, deal with the property to the prejudice of such owner.

In an action for the conversion of certain personal property, it appeared that one W. had, for several years, shipped produce to defendants, commission merchants, to sell; that when he shipped property he would obtain from the carriers two bills of lading, one of which, called the

"original," he forwarded to defendants, the consignees; the other, marked "duplicate," he retained and attached to a draft drawn upon defendants, which he procured to be discounted by the plaintiff. These drafts were frequently drawn without particular regard to the value of the property described in the bills attached, and they were usually accepted or rejected by the defendants according to the condition of W.'s account and the value of the consigned property in their possession. This general course of business was known and acquiesced in by all. From September 29, 1879 to February 18, 1880, W. drew 145 drafts upon defendants, each accompanied by a bill of lading. The first 135 were accepted and paid, but the last ten were not accepted, and, together with the bills of lading attached, were returned to plaintiff as dishonored. The entire property covered by all the bills did not sell for enough to pay the first 135 drafts. *Held*, that defendants had no right to apply the proceeds of the property received by them, under the last ten bills of lading, to the payment of liabilities incurred through the acceptance of previous drafts; that the possession of the original bills gave them no title to the property described therein; that plaintiff, by discounting the drafts, with the duplicate bills attached, acquired title to the extent of the drafts discounted, that, by the uniform course of dealing between the parties, defendants had notice of plaintiff's rights, and it was their duty to hold and dispose of the consignments on plaintiff's account; applying the proceeds to the payment of the specific drafts accompanying the consignments; that plaintiff incurred no liability to defendants on account of the acceptance and payments of drafts by them for a greater amount than the value of the property consigned, and it had the right to consider each subsequent consignment as a new dealing to be treated according to the specific rights thereby acquired; and that therefore, plaintiff was entitled to recover.

(Argued March 2, 1888; decided April 10, 1888.)

Appeal from judgment of the General Term of the Supreme Court, in the fifth judicial department, entered upon an order made on the first Tuesday of January, 1886, affirming a judgment in favor of plaintiff, entered upon the report of a referee.

The nature of the action and the material facts are sufficiently stated in the opinion.

*William F. Cogswell* for appellants. By the course of business between the parties, the technical rule that when a bank discounts a draft to which a bill of lading is attached, it acquires a special property therein, and that the consignee

would have no legal right to receive that property and dispose of it without accepting the draft was abrogated. (*Ontario Bk.* v. *N. J. Steamboat Co.*, 59 N. Y. 510, 514, 515.) It appearing that the bank has received the proceeds of all the property sent by Williams, and $1,200 more, it cannot now claim to recover. (*Merchants Bk. of Canada* v. *Union R. R. & Trans. Co.*, 69 N. Y. 373.)

*George Bowen* for respondent. The transfer of the several bills of lading to the plaintiff accompanying each draft were several and distinct transactions, each bill represented the property covered by it, and was in no manner connected with other separate transactions between the parties, of the same character, and cannot be run into a general account. (*Marine Bk.* v. *Wright*, 48 N. Y. 1; *Bk. of Rochester* v. *Jones*, 4 id. 497; *City Bk.* v. *R. W. & O. R. R. Co.*, 44 id. 136; *Flour City Bk.* v. *Garfield*, 30 Hun 579; *Bk. of Batavia* v. *Erie R. Co.*, 106 N. Y. 200.) The defendants had no legal right to sell the consigned property pledged to the plaintiff and credited to Williams on his account,' any more than they would to pay it over to him if he was not owing them, as the title to the property could not be changed or affected by the condition of the accounts between the defendants and Williams. (*Emery* v. *J. N. Bk.*, 25 Ohio St. 360; 18 Am. R. 599; *Skilling* v. *Ballman*, 73 Mo. 665; 39 Am. R. 537; *Holmes* v. *German S. Bk.*, 87 Pa. 525; *Holmes* v. *Bailey*, 92 Pa. 57.)

Ruger, Ch. J. This action was brought by the alleged owner, to recover the value of certain personal property, claimed to have been wrongfully converted by the defendants. The conversion is alleged to have been established by proof, that the defendants had in their possession on the 9th day of June, 1881, the property claimed, and that the plaintiff then demanded the same, and they refused to deliver it. Such evidence would, of course, authorize a finding of conversion of the property, and if accompanied by evidence of title would justify the recovery. The claim of title by the plaintiff is somewhat confused by reason of the peculiar mode adopted

by one Williams, the general owner, in consigning produce purchased by him, to the defendants to sell on commission. Williams was a produce dealer, residing at Batavia, N. Y., and had for several years been in the habit of sending his property by railroad to the defendants, commission merchants in New York, to sell. He was accustomed, when shipping goods, to obtain from the carrier two bills of lading, one called an original, and the other marked as a duplicate. The originals were sent directly to the defendants, and the duplicates were retained by Williams and attached to drafts drawn upon the defendants, which he procured to be discounted by the plaintiff. These drafts were frequently drawn without particular regard to the value of the property described in the bills attached thereto, and were usually accepted or rejected by the defendants according to the condition of William's's account, and the value of the consigned property in their possession. This was the general course of business pursued by the parties, and was known to and apparently acquiesced in by all. The particular transaction in question grew out of the dealings occurring between September 29, 1879, and February 18, 1880. During that period Williams had drawn one hundred and forty-five drafts, accompanied by the same number of bills of lading, upon the defendants -aggregating in amount $59,025. The first one hundred and thirty-five drafts, amounting to $53,725, were accepted and paid by the defendants, but the last ten, drawn between January 31, 1880, and the thirteenth of February, thereafter, and aggregating $5,300, were not accepted, and, together with the bills of lading accompanying them, were returned to the plaintiff as dishonored bills.

The entire property covered by the one hundred and forty-five bills of lading, as shown by its subsequent sales, produced but $52,065.52, so that by the payment of the first one hundred and thirty-five drafts, the defendants had paid to the plaintiff, an amount in excess of the total proceeds of the property consigned The claim of the plaintiff is that the defendants had no right to apply the proceeds of the property received by them under the last ten bills of lading

to the payment of liabilities incurred through the acceptance of previous drafts, and we are of the opinion that this contention is correct. The practice of carriers in issuing duplicate bills of lading to consignors of property shipped for sale has been much disapproved by the courts, for the reason that it affords a convenient opportunity for the commission of frauds by consignors, as well as subjecting the carrier to the hazard of making incorrect delivery of the property. (*Glyn, Mills & Co.* v. *E. and W. India Dock Co.*, L. R., 7 App. Cases, 591.)

No copies of the bills of lading issued in these transactions appear in the case, but we must assume that, in accordance with the usual custom in regard to such instruments, they authorized the delivery of the property by the carrier to the consignees named therein, according to the order in which they were presented to it. (*Kemp* v. *Falk*, L. R., 7 App. Cases, 573; *Glyn, Mills & Co.* v. *E. and W. India Dock Co.*, *supra.*) No question, however, arises in this case over conflicting claims between holders of respective bills of lading, so there can be no claim that the defendants acquired title to the property consigned, by virtue of the receipt of any bills by them.

It was said by Lord Westbury, in deciding the case of *Barber* v. *Meyerstein* (L. R., 4 E. and I. App. 317), "there can be no doubt, therefore, that the first person, who, for value, gets the transfer of a bill of lading, though it be only one of a set of three bills, acquires the property; and all subsequent dealings with the other two bills must, in law, be subordinate to that first one, and for this reason, because the property is in the person who first gets a transfer of the bill of lading. It might possibly happen that the ship-owner, having no notice of the first dealing with the bill of lading, may, on the second bill being presented by another party, be justified in delivering the goods to that party. But although that may be a discharge to the ship-owner, it will in no respect affect the legal ownership of the goods."

These expressions are approved in *Glyn, Mills & Co.* v. *E. and W. India Dock Company* (*supra*), and undoubtedly

state the conditions of the law in England on the subject at this time. (See, also, *Lickbarrow* v. *Mason*, 2 T. R. 63, and notes to that case in Shirley's Leading Cases in Common Law, 204, Blackstone Series.) The possession of these bills, therefore, gave the defendants no title to the property described therein, but simply conferred upon them, the right to receive it from the carrier, and hold it subject to an accounting with the consignor when sold, or to the true owner when he should appear. If, however, before incurring liabilities upon the credit of such consignment, they received notice of its previous transfer to another party for value, they could not thereafter deal with the property to the prejudice of the rights of such party. By taking a transfer of a bill of lading from the consignor and discounting a draft upon the faith thereof, the plaintiff acquired title to the property described therein to the extent of the draft discounted by it, paramount to the claims of any other party. This would clearly be so unless such party had in good faith parted with value in reliance upon the possession of the property lawfully acquired. (*Commercial Bk. of Keokuk* v. *Pfeiffer*, 108 N. Y. 242, and cases therein cited.)

When a consignee of property to sell, accepts drafts upon the faith of such consignment, he acquires the right to sell the property and apply its proceeds in payment of such drafts, but if such proceeds are insufficient for such purpose he must rely upon the responsibility of the drawee alone, to repay any deficiency. By the mere receipt of subsequent shipments he acquires no lien thereon, to the prejudice of those who have advanced money upon them, and taken transfers of bills of lading, to secure such advances.

The defendants had notice, by the uniform course of dealing between the parties, and the invariable practice of Williams in raising money of the plaintiff to make purchases, that the consignments in question had been transferred to the plaintiff, and they could not prejudice its rights thus acquired, except by incurring in good faith new liabilities upon the faith of Williams' apparent ownership and their possession of

the property, even if they could do so under such circumstances. It was the duty of the defendants, when they received notice of the ownership of consignments by the plaintiff, to hold and dispose of them on its account, applying the proceeds to the payment of the specific drafts accompanying the consignment, and if insufficient for that purpose to charge the deficiency to their consignor. The plaintiff, however, never incurred any liability to the defendants on account of the acceptance and payment of drafts by the defendants, for a greater amount than the value of the property consigned, and had the right to consider each subsequent consignment, as a new dealing, to be treated according to the specific rights thereby acquired.

With respect to the ten bills of lading in question, the evidence shows that the plaintiff advanced money upon the transfer thereof to it, and acquired title to the property therein described before any other right or claim could have attached thereto, and it is clear that they had the right to have its proceeds applied in satisfaction of the respective drafts accompanying the respective consignments, or to have the property delivered to them upon demand.

Some proof was given tending to show that the plaintiff was ignorant of its legal rights until after all of the consignments were received by the defendants; but there is no evidence that the defendants were prejudiced by this conduct of the plaintiff, or that it was estopped from asserting its legal ownership by any steps taken by the defendants in reliance upon the plaintiff's conduct.

It is quite possible that the defendants might thereby have felt authorized to pursue a course of business which would not otherwise have been adopted; but this affords no reason why courts should disregard the plain legal rights of parties, unless some element of estoppel, as against such parties, is introduced into the transaction. The fact that a party has on other occasions omitted to enforce his clear legal rights, as to some property, affords no reason why he should be defeated as to

legal claims upon other property, when he does finally assert them.

The judgment of the General Term should be affirmed.

All concur.

Judgment affirmed.