JOHNSON ET AL. *v.* CLARK ET AL.

[No. 2,290.   Filed May 25, 1898.]

BILLS AND NOTES.— *Drafts.—Acceptance.— Sales.—* A stock dealer bought a lot of cattle, sent them to a commission merchant for sale, and drew a sight-draft on the commission merchant in payment for the cattle as he had been in the habit of doing, being at the time indebted to the merchant for overdrafts previously made. The bank receiving the draft for collection gave the merchant notice thereof, and the merchant agreed to inform the bank in the afternoon of that day whether he would accept the draft. In the meantime the merchant sold the cattle, and after reimbursing himself from the proceeds of the sale for the amount due him for overdrafts, paid the balance to the holder of the draft and notified the bank that he would not accept the draft. *Held,* that the sale of the cattle with the knowledge of the draft, under the circumstances, did not amount to an acceptance of the draft, and that the commission merchant was not liable for the payment of the draft.

From the Marion Superior Court.   *Affirmed.*

*Enoch G. Hogate, James L. Clark* and *Newton M. Taylor,* for appellants.

*Thomas S. Cravens* and *Merrill Moores,* for appellees.

COMSTOCK, J.—The appellants instituted this action against the appellees in the Marion Superior Court. The complaint and exhibit filed therewith are as follows: On the 18th day of July, 1895, Nathan Vestal, by

his bill of exchange, a copy of which is filed herewith, marked "Exhibit A," and made a part hereof, requested the defendants in the name and style of "Clark, Wysong & Voris" to pay to plaintiffs in the name and style of ."Albert Johnson & Co." the sum of seven hundred and nine and 43-100 dollars ($709.43) at Fletcher's Bank, Indianapolis, Indiana; that on said date defendants accepted said bill; that said sum is now due and unpaid, excepting a payment of four hundred and twenty-five and 30-100 dollars ($425.30) as shown by a credit thereon. Demand for judgment for $350.00. "Exhibit A. July 18, 1895. $709.43. At sight pay to the order of Albert Johnson & Co. seven hundred nine and 43-100 dollars, at Fletcher's Bank, Indianapolis, with exchange. Value received—and charge the same to account of Nathan Vestal. To Clark, Wysong & Voris. Stock Yards." Indorsement on back. "Pay to G. A. Fletcher & Co. or order. Albert Johnson & Co." "I received $425.30 from N. Vestal, a check on Clark, Wysong & Voris and paid the same to Albert Johnson & Co. J. J. Wills."

The defendants answered by general denial. The court found for the appellees, and rendered judgment against the appellants for costs. The appellants filed their motion for a new trial upon the following grounds, to wit: First, that the decision of the court is not sustained by sufficient evidence; second, that the decision of the court is contrary to law. The motion for a new trial was overruled, which ruling of the court is the error assigned in this appeal.

The only questions arise upon the evidence. There is no conflict of the evidence. It may be summarized as follows: At the time the sight draft mentioned in the complaint was drawn, the appellants were engaged in a general merchandise and banking business at Clayton, Hendricks county, Indiana. The appel-

lees were commission merchants at the stock yards, Indianapolis, Marion county, Indiana. Nathan Vestal, drawer of the draft, was living in Hendricks county,and was engaged in the business of buying and selling stock, cattle and sheep, and was in the habit of consigning the same to the appellees. Mr. Vestal had been in the habit of executing sight-drafts on appellees similar to the one in suit, and they had heretofore honored the same. The day before the execution of the draft Mr. Vestal had informed the appellees at their place of business that he had arranged to buy ten head of cattle near Clayton, and that he would bring them in possibly the next day. On July 18, 1895, at Clayton, he drew the draft in suit against these cattle, said draft having been drawn in payment for the cattle. The next morning between six and seven o'clock he delivered the ten head of cattle at the stock yards, in West Indianapolis, he having driven them in from Hendricks county. He then put them in the retail yards of the appellees. Immediately after the execution of the draft the appellants mailed the same to Fletcher's Bank, in Indianapolis, for collection. Between eight and nine o'clock on the 16th Fletcher's Bank notified appellees that they had the draft for collection, and the appellees answered that they would let the bank know in the afternoon of that day what they would do about it. Between twelve and one o'clock of the 19th, and after they had notice of the draft, the appellees sold the cattle and collected the proceeds arising therefrom. The appellees sold the cattle for $673.66, clear of all expenses. They then notified Fletcher's Bank that they would not honor the draft. Mr. Vestal was owing them a balance of $248.36 for overdrafts theretofore executed, and they took said amount out of the proceeds of the sale of said cattle,and paid the remainder, $425.30, to

Mr. Vestal; and he paid the same on the draft.    At
the time of the execution of the draft in suit the ap-
pellees had no money in their possession belonging to
Mr. Vestal, but on the contrary he was owing them for
two overdrafts.    The evidence shows that Mr. Vestal
always drew a draft against each lot of cattle bought
by him, or the parties from whom he bought the
cattle would come to appellees and get their money
at the yards.    Mr. Voris testified that the reason that
they did not accept the draft in the morning was be-
cause he did not then know what the cattle against
which the draft was drawn would sell for.    These
were the only cattle they sold for Vestal that day.

Appellees knew before they sold the cattle that the
draft had been drawn against the cattle and that it
was Mr. Vestal's desire that the proceeds of the sale
should be applied to the payment of the draft.    It is
claimed by appellants that the sale of the cattle with
the knowledge that the draft was drawn against them
was in law an acceptance of the draft, and that there-
fore the judgment of the court was contrary to law,
and not sustained by sufficient evidence.    Appellants'
learned counsel argue that inasmuch as Vestal was
owing both the appellants and the appellees, and
elected to pay appellants first, he proposed to do what
the law permits, prefer his creditors.    It must be re-
membered, however, that the cattle were delivered to
appellees by Vestal for sale by them before they had
knowledge of the draft, and without notice that he
wished the cattle sold for the benefit of appellants.
When a debtor has delivered to his creditor the
amount due him or placed in his hands the means by
which it may be realized, without conditions, the
debtor loses the right of preference.    Appellees did
not at any time promise to accept the draft.    The
cattle brought $36.00 less than the face of the draft,

and immediately upon the sale of the cattle the bank was notified that the draft was refused.

Appellants' learned counsel further contend that in view of the circumstances of the case, the sight-draft constituted in law and equity an assignment to appellants of the proceeds arising from the sale of the cattle, and to sustain their claim cite from 1 Daniels on Negotiable Instruments, section 21, also the 2 Am. and Eng. Ency. of Law (2nd ed.) p. 1059, to the effect that "It is a general rule that an order payable out of a particular fund operates as an equitable assignment of the fund not only as between the drawer and payee, but as regards the drawee also, notwithstanding the order may not be accepted by the latter party."

In the case before us when the draft was drawn, there were no funds in the hands of the drawee. The drawer was indebted to the drawee upon former transactions. A factor to whom goods are consigned for sale has a lien upon those goods or upon the proceeds from the sale thereof, not only for any expenses that he may have incurred in connection with those particular goods, but also for the balance due him from his principal on their general acount. *Johnson* v. *Hoosier Drill Co.*, 99 Pa. St. 216; *Bryce* v. *Brooks*, 26 Wend. 369; *Hidden* v. *Waldo*, 55 N. Y. 294; *Daniel* v. *Swift*, 54 Ga. 113; *Chaffraix* v. *Harper*, 26 La. 22; Story on Sales (4th ed.), section 97, p. 92. Chalmers on Bills of Exchange, on page 179, says: "A bill, of itself, does not operate as an assignment of funds in the hands of the drawer available for the payment thereof, and the drawee of a bill who does not accept as required by this act is not liable on the instrument." In the *First National Bank, etc.,* v. *Ege,* 109 N. Y. 120, 16 N. E. 317, a shipper drew against the consignment upon the consignee with whom his ac-

count was already overdrawn, and transferred the property by assignment of the duplicate bills of lading to the bank which discounted the drafts. The consignees or drawees refused to accept the drafts, but afterward received the property from the carrier upon the original bills of lading. It was held by the court that the consignees had no right to apply the proceeds arising from the sale of the goods to the discharge of the balance due them from the consignor arising from other transactions, and that the bank had acquired title to each consignment to the extent of the draft it had discounted on the security of such consignment.

In the case at bar the seller had overdrawn his account; he did not transfer the property to the bank, but he delivered the cattle to the appellees. The bank had no interest in the proceeds from the sale, although Vestal was indebted to appellants. In *Waymuth* v. *Boyer*, 1 Ves. Jr. 416, there was an agreement communicated to the factor and agreed to by him before the goods were placed in his hands, that the goods were to be sold for the benefit of a particular creditor, and it was held that the factor could not retain the proceeds for a demand against the owner. The difference in the case at bar and the one just cited is apparent. The evidence shows a refusal to accept the draft; that it was for more than the amount realized from the sale of the cattle; that the cattle were delivered for sale by the owner, who was at the time the debtor of appellees, to appellees without notice of the draft. Appellees accounted for the amount realized from the sale of the cattle less the amount of the expenses of the sale and former overdrafts. We find no error. Judgment affirmed.