Though appellant was a petitioning creditor, the proceeding instituted was not in effect in its behalf, or for its benefit, but was one directed not against Chamberlain the general assignee, in whose right this action is brought, but against Bevins & Co. only, its ultimate object being to have the bankrupts' property applied ratably in satisfaction of the claims of all creditors of the firm. It is not a proceeding the purpose of which primarily at least is as in the case last above cited to destroy the title to property of one from whom it has been illegally taken, or render it ineffectual in support of his cause of action against the wrongdoer; but it is to have all the property of the real owners, the bankrupts, including the property taken from the assignee, applied in the orderly course of bankruptcy proceedings in payment of the claims against the bankrupts. There would seem to be no reason why the fact that appellant joined in such a petition should preclude its right to set up the facts, already fully set out above, in mitigation of damages in this action any more than it would in a similar case where it appeared an administrator of an estate had been appointed on its petition. It would hardly be reasonable to hold that such fact would preclude the wrongdoer from showing in mitigation of damages the fact that he had returned to the administrator the property which he had wrongfully taken from the intestate's agent.

Judgment reversed, and new trial granted, with costs to appellant to abide event. All concur.

---

MANUFACTURERS' COMMERCIAL CO. v. ROCHESTER RY. CO. et al.

(Supreme Court, Appellate Division, Fourth Department. January 11, 1911.)

1. PLEDGES (§ 21*)—ASSIGNMENTS AS SECURITY—TITLE.

     Where a lumber company acknowledged an indebtedness and, as security, assigned 30,000 ties of an order sold to a railroad, and when assigned the ties were not collected or located, and delivery did not begin for two months, no title to any specific ties passed to the assignee.

     [Ed. Note.—For other cases, see Pledges, Cent. Dig. § 45; Dec. Dig. § 21.*]

2. CARRIERS (§ 58*)—BILLS OF LADING—ASSIGNMENT—ADVANCES.

     Where advances are made upon goods in transit, and the bill of lading or invoice is assigned, the title to the goods passes and vests in the assignee.

     [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190; Dec. Dig. § 58.*]

3. CARRIERS (§ 58*)—BILLS OF LADING—PASSAGE OF TITLE.

     The passage of title to goods in transit by an assignment of the invoices or bills of lading to secure advances is controlled largely by the intention of the parties.

     [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190; Dec. Dig. § 58.*]

4. CARRIERS (§ 58*)—TRANSFER OF BILLS OF LADING—PRIORITY BETWEEN ASSIGNEES.

     A lumber company, which had a contract to deliver a large number of ties to a railroad company, assigned to plaintiff, its creditor, 30,000 ties, but, no ties having been collected at the time, no title to specific ties passed. When shipments were later made, the bills of lading were

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

indorsed by the lumber company to plaintiff to apply on the debt, and payment was made thereon to the plaintiff by the railroad company. *Held*, that the rights of another creditor of the lumber company, who made advances on the security of pledges of bills of lading of specific ties, to money in the hands of the company, held by it for payment for the ties represented by the pledged bills of lading, were superior to the claim of plaintiff.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190; Dec. Dig. § 58.*]

Appeal from Equity Term, Monroe County.

Action by the Manufacturers' Commercial Company against the Rochester Railway Company and Josiah W. Place. From a judgment for an insufficient amount, plaintiff appeals. Affirmed.

See, also, 137 App. Div. 882, 123 N. Y. Supp. 1128.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

George A. Carnahan, for appellant.
J. S. L'Amoreaux, for respondent Place.
Edwin A. Nash, for respondent Rochester Ry. Co.

SPRING, J. This action was originally commenced for an accounting against the defendant railway company to recover about $13,000, the balance claimed to be due on account of railroad ties sold by the Eccleston Lumber Company to said railway company. The latter company had this money in its possession and was ready to pay it to the rightful owner. Josiah W. Place also made claim to this money and was, by order of the court, made a party defendant; and the chief controversy is between these two claimants to this fund.

The Rochester Railway Company had from time to time purchased ties of the Eccleston Lumber Company, and on the 8th day of August, 1906, mailed a written order, numbered 13,927, to the agent of the lumber company for 40,000 ties at 59 cents per tie to be paid within 30 days "after receipt of each lot." The lumber company accepted this order. It purchased and collected ties in different places in the state of North Carolina. It commenced delivering ties to the railway company in fulfillment of order No. 13,927 early in January, 1907, and delivered to the defendant railway company during the early part of that year over 86,000 ties—all in recognition and pursuance of said order. The greater part of these ties were shipped by ocean to New York City, and thence by the Erie Canal to the railroad company in Rochester, and the residue by rail to the same city.

The plaintiff, a banking corporation of the city of New York, prior to the delivery of order 13,927, had loaned money to the Eccleston Lumber Company on which there remained unpaid $13,050. In order to secure this outstanding indebtedness, the Eccleston Lumber Company on the 15th of November, 1906, delivered to the plaintiff a written acknowledgment of the indebtedness mentioned and transferred property described as 30,000 ties, following the description and price set forth in order 13,927, amounting to $13,050, after the deduction of the estimated freight charges. The plaintiff promptly notified the

railway company by letter of the assignment of the ties. The defendant railway company replied November 19, 1906, acknowledging that it had ordered of the lumber company 40,000 ties, none of which had been delivered, and that there were no claims against them, and added:

"As soon as this order has been filled we shall be glad to remit, within thirty days, the amount due to any company designated by the Eccleston Lumber Company."

During the progress of the delivery of the ties to the railway company in pursuance of order 13,927, invoices of certain shipments were indorsed by the lumber company over to the plaintiff to apply on its indebtedness, and in each instance payments were made by the railway company to it. In this way the plaintiff received $3,041.31, the avails of 7,901 ties.

The defendant Place was engaged in business as a banker in the city of New York under the name of J. W. Place & Co. When the lumber company commenced shipping these ties to the railway company, Place & Co. made advances to the lumber company. Simultaneously with advancing the money, Place & Co. received the invoices and bill of lading of the particular ties which at the time were in transit, and the goods shipped by water were consigned to Place & Co. at New York, and by it reshipped to the railway company. These invoices were made in triplicate, one of which was delivered to the lumber company, one to the consignee Place & Co., and one to the railroad company. Each invoice recited the sale of these ties to the railway company under order No. 13,927, the quantity of ties in the particular shipment, describing size, kind of wood, and price conformably to the order mentioned, and the net balance, route of shipment, and at the bottom the following was written:

"This bill is assigned to Messrs. J. W. Place & Co., Bankers, No. 67 Wall St., New York City, and must be paid to them only—any errors in terms, or otherwise, must be reported to them immediately, as no deductions will be allowed at time of settlement.

"[Signed]                 The Eccleston Lumber Co., J. B. Eccleston, Pres."

Place & Co. had no knowledge of the transactions of the plaintiff with the lumber company in regard to these ties, and the plaintiff was also in ignorance of the dealings with Place & Co. As these ties were delivered and accepted by the railway company accompanied by directions of the lumber company to pay the net proceeds of the particular shipment to the plaintiff, it complied with these directions. So, when the invoices and bills of lading denoted that the payment of the particular lot was to be made to Place & Co., the railway company recognized the claim of that firm and paid to it. Upon the invoices to Place & Co. payments were made for over 52,000 ties. The railway company had in its custody at the time of the commencement of the action $11,139.55, the net avails of over 25,000 ties shipped by the lumber company in pursuance of said order. The invoices of all of these ties had been delivered over to Place & Co. upon specific advances made by that firm in the manner above described. The amount of the sums advanced by Place & Co. as above narrated exceeds the amount received from the railway company, even if it should be paid all the

money in the custody of that company. There is no charge or proof of fraud or collusion in any of the transactions.

It is the claim of the plaintiff that by the assignment made in November, and which antedated any of the advances made by Place & Co., it acquired the title to 30,000 of these ties; that it notified the defendant railway company of its claim, and as between the plaintiff and that company the latter was bound to recognize the ownership of the plaintiff to these ties, and payments made to Place & Co. until the plaintiff had received the entire net proceeds of these specific ties were made at its peril and cannot be allowed to defeat or diminish the amount due the plaintiff.

At the outset, it is clear that the plaintiff did not obtain title to any specific ties by the assignment made to it. The delivery of the ties did not commence to be made until two months after its claim originated. The ties had not been located or accumulated. This was done as each lot was shipped, and the place where any particular shipment would start from was not known to the lumber company in November when the assignment was made to the plaintiff. Again, it seems plain that the lumber company did not expect that the plaintiff would receive the money from the avails of the first 30,000 ties delivered to the railway company or from any definite 30,000. The lumber company in notifying the railway company of the transfer to the plaintiff explicitly informed it that, whenever a shipment was made "on account of said bill for the 30,000 ties," it would be advised accordingly; and this method was adopted and complied with by the railway company. The plaintiff made no complaint to the railway company and no inquiry as to the delivery of these ties, and accepted its money on the particular invoices and bills as they were transmitted to the railway company and honored by it. Apparently there was no further communication with the lumber company. The railway company, therefore, was acting strictly in accordance with the instructions of the lumber company and had no knowledge that the plaintiff expected the avails of any special lot of ties and was justified in believing that the course of dealing directed by the lumber company was known by and acceptable to the plaintiff.

The plaintiff urges that the defendant Place has not proven his right to these moneys, and hence its own assignment should be recognized and the money paid to it. Its position is tenable if the premises are sound. It claims: First, Place & Co. did not secure any title to or lien upon the property; and, second, that the papers upon which the judgment is founded were not competent.

If we give full effect to the invoices and bills of lading with the assignment of each while the goods described in it were in transit, and with the advances of money made coeval with the delivery of each invoice and bill assigned, we must hold that the title became immediately vested in Place with the actual change of possession of the ties set out in the papers. Commercial Bank of Keokuk v. Pfeiffer et al., 108 N. Y. 242, 250, 15 N. E. 311; Bailey et al. v. Hudson R. Co., 49 N. Y. 70; Leinkauf Banking Co. v. Grell, 62 App. Div. 275, 277, et seq., 70 N. Y. Supp. 1083; Willets et al. v. Hatch, 132 N. Y. 41, 44, 30 N. E. 251,

17 L. R. A. 193; Gass v. Astoria Veneer Mills, 121 App. Div. 182, 105 N. Y. Supp. 794; First Nat. Bank v. Ege, 109 N. Y. 120, 125, 16 N. E. 317, 4 Am. St. Rep. 431.

The effect of a transfer of this kind is controlled largely by the intention of the parties at the time. The lumber company certainly expected it was vesting the title and possession in Place & Co. of each particular lot of ties described in the invoice and transferred to Place & Co. It directed the purchaser of the ties to make payment of this specific quantity to the assignee or transferee. The lumber company probably was not intending to violate its agreement with the plaintiff. It had not transferred any particular ties to it in the original agreement and may have confidently expected, as it was selling a large quantity of ties to the railway company far in excess of the quantity originally ordered, that it could pay both of the claimants. Of course, Place & Co. made advances from time to time upon the faith of the transfers and in the belief that its title to each lot which it acquired was unassailable. The integrity of the transactions not being impugned, the superior right of Place & Co. to the ties and the avails covered by the transfer to it, I think, is clear.

As to the second proposition, that there was no competent proof of the ownership of Place & Co.: The action was previously tried, and the title of Place & Co. depended upon secondary and oral evidence which was received on condition that it was to be supplemented by the original bills of lading; and, if this condition was not complied with, the court was to pass upon the motion to strike out the secondary proof. The condition was not met, and after the submission of the case the court struck from the record all testimony of the transfers of the bills of lading to Place & Co. where the original or duplicate bills were not in evidence and that included all applying to the ties not yet paid for, and awarded judgment for the plaintiff based on the priority in time of its assignment. Upon motion to the justice presiding at the trial an order was entered reopening the case, which order was affirmed on appeal. 137 App. Div. 882, 123 N. Y. Supp. 1128. On the further hearings bills of lading were identified and received in evidence, and in connection with that evidence previously received was sufficient to uphold the findings establishing the superiority of the title of the defendant Place to the moneys in the possession of the railway company.

The evidence of the transactions is undisputed. They establish clearly the intention to vest the title of the ties in Place & Co. upon the moneys loaned or advanced by that firm, as already explained. The strict rule which often obtains in requiring the production of bills of lading or other documents in order to establish title ought not to apply to the facts in this case. The bills of lading and invoices with the assignments were satisfactory to the railway company. The invoices were made in triplicate. Each was an original, and they were in evidence. However, I think, within the strict rule the bills of lading were sufficiently proven. Again, it appears that the ties shipped by water were billed directly to Place & Co. at New York and by that firm reshipped to the railway company, so that as to those ties there

was an actual delivery of them by Place & Co. to the railway company. The judgment should be affirmed.

Judgment affirmed, with costs and disbursements in favor of the defendant Place. All concur.